United States District Court
Eastern District of Michigan
Southern Division

United States of America,

                    v.

D-3 Gary Jones,

          Defendant.

Case No. 19-cr-20726

Honorable Paul D. Borman

Offenses:
Count One: **Conspiracy to Embezzle Union Funds & Use a Facility of Interstate Commerce to Aid Racketeering** (18 U.S.C. § 371).
Count Two: **Conspiracy to Defraud the United States** (18 U.S.C. § 371).

Maximum Imprisonment:
Count One:     5 years;
Count Two:     5 years.

Maximum Fine:
Count One:     $250,000;
Count Two:     $250,000.

Maximum Supervised Release:
Count One:     3 years;
Count Two:     3 years.

---

# Rule 11 Plea Agreement

---

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, defendant **Gary Jones** and the government agree as follows:

## I.     Guilty Plea

### A.     Counts of Conviction

Defendant **Gary Jones** will enter a plea of guilty to Count One and Count Two of the Second Superseding Information.

Count One of the Second Superseding Information charges conspiracy to embezzle union funds and to use a facility of interstate commerce to aid racketeering activity, in violation of 18 U.S.C. § 371.

Count Two of the Second Superseding Information charges conspiracy to defraud the United States, in violation of 18 U.S.C. § 371.

### Elements of the Offenses

The elements of conspiracy to embezzle union funds and to use a facility of interstate commerce to aid racketeering activity, as charged in Count One of the Second Superseding Information, are as follows:

(1)     Two or more persons conspired to violate the Labor-Management Reporting and Disclosure Act in violation of 29 U.S.C. § 501(c) to embezzle union funds and to violate 18 U.S.C. § 1952(a)(3) to use a facility of interstate commerce to aid racketeering activity.

(2)     The defendant knowingly and voluntarily joined the conspiracy.

- 2 -

(3)    A member of the conspiracy did one of the overt acts described in the Second Superseding Information for the purpose of advancing or helping the conspiracy.

The elements of a violation of 29 U.S.C. § 501(c), embezzlement of union funds, are as follows:

(1) The United Auto Workers union was a labor organization within the meaning of 29 U.S.C. §§ 402(i) and (j).

(2) The defendant was either an officer of the United Auto Workers union or was directly or indirectly employed by the United Auto Workers union during the period when the offense occurred.

(3) The actions of the defendant constituted embezzlement, stealing, or unlawful and willful abstraction or conversion to his own use or the use of another.

(4) The assets taken during the offense were moneys, funds, securities, properties, or other assets of the United Auto Workers union.

The elements of a violation of 18 U.S.C. § 1952(a)(3), use of a facility of interstate commerce to aid racketeering activity, are as follows:

(1) The defendant used a facility of interstate commerce.

(2) The defendant did so with the intent to promote an unlawful activity.

(3) The defendant thereafter performed or attempted to perform or facilitated the performance of the unlawful activity.

- 3 -

The elements of conspiracy to defraud the United States, as charged in Count Two of the Second Superseding Information, are as follows:

(1)     Two or more persons conspired to defraud the United States by concealing their income, evading the payment of taxes, and causing false Internal Revenue Service Form 990s and 1040s to be filed.

(2)     The defendant knowingly and voluntarily joined the conspiracy.

(3)     A member of the conspiracy did one of the overt acts described in the Second Superseding Information for the purpose of advancing or helping the conspiracy.

## B.     Factual Basis for Guilty Pleas

The following facts are a sufficient and accurate basis for defendant **Gary Jones'** guilty plea to Count One:

### Relevant Organizations and Individuals

1. The International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (referred to herein as "UAW" or as "United Auto Workers") was a labor organization engaged in an industry affecting commerce within the meaning of Sections 402(i) and 402(j) of Title 29, United States Code. The UAW represented hundreds of thousands of non-managerial employees employed by automobile manufacturers and other employers at numerous locations

in Michigan and across the United States.  The UAW was headquartered in Detroit, Michigan.

2. The UAW Region 5 Midwest States Community Action Program (CAP) Council ("UAW Midwest CAP"), the UAW Midwest CAP's predecessor entities, and the UAW Region 5 Southwestern States CAP Council ("UAW Southwest CAP") were labor organizations engaged in an industry affecting commerce within the meaning of Sections 402(i) and 402(j) of Title 29, United States Code.

3. The UAW Midwest CAP, its predecessor entities, and the UAW Southwest CAP are some of the UAW's many Community Action Program Councils funded through "per-capita" tax payments derived from member dues. CAP councils existed as labor organizations subordinate to the UAW and were governed by the UAW Constitution and its bylaws.  The UAW Southwest CAP was based in Dallas, Texas; while the UAW Midwest CAP was located at the UAW Region 5's headquarters in Hazelwood, Missouri.  UAW Region 5 was an internal subdivision of the United Auto Workers union.

4. From at least 2010 through September 2012, **Gary Jones** was the Assistant Director of UAW Region 5.  From September 2012 through June 2018, **Gary Jones** was the Director of UAW Region 5.  From June 2018 through at least September 2019, **Gary Jones** was the President of the UAW.  As such, **Gary Jones** was an

officer, within the meaning of Sections 402(n) of Title 29, United States Code, and was responsible for overseeing the operations of this UAW entity and the UAW.

5. At the times set forth in the Second Superseding Information, Edward N. Robinson, UAW Official B, UAW Official C, UAW Official D, UAW Official E, and Vance Pearson served as either an officer or direct employee of the United Auto Workers.

## The Conspiracy to Embezzle UAW Funds

6. From at least in or about 2010 and continuing through in or about September 2019, both dates being approximate, in the Eastern District of Michigan, Southern Division, and elsewhere, the defendant, **Gary Jones**, Edward N. Robinson, Vance Pearson, UAW Official B, UAW Official C, Union Official D, and UAW Official E did unlawfully, knowingly, and willfully combine, conspire, confederate, and agree with each other and with other individuals, both known and unknown, to embezzle union funds.

7. During the course of the conspiracy, while **Gary Jones**, Edward N. Robinson, Vance Pearson, Union Official B, UAW Official C, Union Official D, and UAW Official E, were officers of the United Auto Workers or were employed directly by the United Auto Workers, they did embezzle, steal, and unlawfully and willfully abstract and convert to their own use more than $1 million of the moneys, funds, property, and other assets of the United Auto Workers.

- 6 -

8. While officers or employees of the United Auto Workers, **Gary Jones**, UAW Official B, UAW Official C, UAW Official D, UAW Official E, Vance Pearson, and Edward N. Robinson were involved in a multifaceted scheme to embezzle funds from the UAW.  One facet of the scheme involved fraudulently obtaining hundreds of thousands of dollars of UAW funds from the UAW headquarters, the UAW Southwest CAP, and the UAW Midwest CAP.  Much of this money was obtained through the submission of vouchers that claimed the payments were for legitimate expenses for UAW Region 5 conferences.  In reality, the vouchers concealed the true destination of the funds and the true purpose of the expenses, which was for the personal benefit of select senior UAW officials. Another facet involved a scheme to fraudulently divert hundreds of thousands of dollars union funds from the UAW Midwest CAP or its predecessor entities, a significant portion of which was converted to cash, and which was then used by conspirators for personal expenses.

9. While officers or employees of the United Auto Workers, **Gary Jones**, UAW Official B, UAW Official C, Vance Pearson, and Edward N. Robinson established "Master Account" arrangements with various hotels across the United States.  Ostensibly, these hotels contracted to facilitate various union conferences and meetings related to UAW Region 5.  However, the Master Accounts were used to divert hundreds of thousands of dollars of UAW funds for the personal benefit of

- 7 -

select senior UAW officials, including **Gary Jones**, UAW Official B, UAW

Official C, UAW Official D, UAW Official E, Vance Pearson, and Edward N.

Robinson.  These Master Accounts were funded, in part, by transfer from the UAW

Headquarters based on fraudulent vouchers submitted by senior UAW officials,

which misrepresented the destination and purpose of the expenses.  Although the

vouchers represented the payments were to the hotel for legitimate conference

expenses, significant portions of the funds were forwarded through the Master

Account to outside vendors for personal expenses including cigars, private villas,

high-end liquor and meal expenses, golfing apparel, golf clubs, and green fees.  If

funds from the UAW's headquarters were exhausted or additional funds were

needed, checks were issued from the UAW Midwest CAP and the UAW Southwest

CAP to satisfy debts incurred by senior UAW officials for illegitimate and personal

expenses.  This portion of the fraud resulted in the unauthorized or improper

disbursement of hundreds of thousands of dollars of UAW funds.

10. In approximately 2010, UAW Official B directed **Gary Jones**, UAW

Official E, and others to use the Master Account arrangement with hotels, which

were hosting UAW conferences, in order to facilitate and conceal the use of UAW

funds for personal purposes.

11. While an officer of the United Auto Workers, Edward N. Robinson

diverted hundreds of thousands of dollars from the UAW Midwest CAP through the

acquisition of unsubstantiated and unauthorized UAW Midwest CAP checks.

While an officer of the UAW, UAW Official E embezzled UAW funds in

conjunction with the scheme by Edward N. Robinson to divert funds from the

UAW Midwest CAP. To conceal the theft, Edward N. Robinson fraudulently

backstopped the payments with receipts for fake expenses or for expenses which

had already been fully paid. Many of the receipts for expenses utilized by Edward

N. Robinson for the cash embezzlement portion of the conspiracy had already been

paid for by the United Auto Workers through the Master Account scheme detailed

above in order to fraudulently justify the reimbursement of Edward N. Robinson

with UAW Midwest CAP funds.

12. During the course of the conspiracy, Edward N. Robinson negotiated

hundreds of thousands of dollars in fraudulent, unsubstantiated, or unauthorized

checks from the UAW Midwest CAP. Edward N. Robinson negotiated these

checks into cash. After Edward N. Robinson obtained the cash generated from the

scheme, he delivered cash proceeds to **Gary Jones**, UAW Official E, UAW Official

C, and other co-conspirators.

13. During the course of the conspiracy, portions of the hundreds of

thousands of dollars in cash proceeds from the UAW Midwest CAP portion of the

conspiracy were used to pay for personal expenses of Edward N. Robinson, Vance

Pearson, **Gary Jones**, Union Official B, Union Official C, Union Official D, and Union Official E.

14. During the course of the conspiracy, **Gary Jones** knowingly accepted at least $60,000 in cash proceeds from Edward N. Robinson from the embezzlement of the UAW Midwest CAP, including $15,000 improperly taken from the UAW Labor Employment Training Corporation, which is a separate legal entity from the UAW Midwest CAP.

15. As part of the scheme, **Gary Jones** signed and verified vouchers relating to UAW Region 5 conferences submitted for payment to UAW headquarters, which he knew contained false or incomplete information in order to conceal the embezzlement of UAW funds.

16. UAW Official B directed **Gary Jones** and Vance Pearson to use UAW funds to provide UAW Official B with cigars, cases of wine, and bottles of Crown Royal XR premium liquor. **Gary Jones** and Vance Pearson used UAW funds to purchase and then ship cases of wine and boxes of cigars to UAW Official B's personal residence and his office in Detroit.

17. UAW Official B directed **Gary Jones** and Vance Pearson to use UAW funds to provide UAW Official B with a three bedroom villa in Palm Springs, California for the personal use of UAW Official B for months at a time from 2015 through 2018. This was done even though **Gary Jones** knew that UAW Official B

had no legitimate union business purpose for being in Palm Springs for such extended periods of time. On at least one occasion, UAW Official B directed **Gary Jones** to provide a villa in Palm Springs for a family vacation during the Christmas holidays for UAW Official B, unrelated to UAW business.

18. During the course of the conspiracy, UAW Official B directed **Gary Jones** and Vance Pearson to use UAW monies, including monies from UAW regional activity funds, to pay for personal expenditures in Palm Springs and Coronado, California that benefited UAW Official B and other UAW officials, including for the purchase of large quantities of cigars, cigar paraphernalia, humidors, rounds of golf, villas, liquor, and merchandise at golf club pro shops.

19. During the conspiracy, and at the request of UAW Official B, **Gary Jones** directed that UAW funds be used to pay for expensive liquor for UAW Official B's spouse, who was not a UAW member.

20. During the conspiracy, UAW Official B directed **Gary Jones** and Vance Pearson to provide housing, entertainment, and cigars in Palm Springs for two retired friends of UAW Official B even though they had no legitimate, union business role in Palm Springs.

21. As part of the conspiracy, **Gary Jones** promised to use UAW funds in the future to take care of a relative of Edward N. Robinson, so that Robinson would maintain the secrecy of the conspiracy.

22. Of the more than $1 million in UAW funds embezzled as part of the conspiracy, **Gary Jones** only personally benefitted from a portion of this amount, with other high-level UAW officials enjoying the benefit of the majority of the proceeds of the embezzlement.

## Overt Acts

In furtherance of the conspiracy, and to effect the objects thereof, the defendant and his co-conspirators committed and caused to be committed the following overt acts, among others, in the Eastern District of Michigan, and elsewhere:

23. In or about January 2014, **Gary Jones** directed UAW Official C and another UAW official to convince hotel accounting employees in Palm Springs, California, at the Desert Princess Hotel, to conceal tens of thousands of dollars in personal expenditures, which had no legitimate union business purpose, within the legitimate costs of the January 2014 UAW Region 5 conference.  The expenses were concealed so that the UAW headquarters, union members, and federal authorities would not be aware of the embezzlement conspiracy.

24. In or about January 2015, **Gary Jones** directed UAW Official C to convince hotel accounting employees in Palm Springs, California, at the Renaissance Palm Springs Hotel, to conceal tens of thousands of dollars in personal expenditures, which had no legitimate union business purpose, within the legitimate

costs of the January 2015 UAW Region 5 conference.  The expenses were

concealed so that the UAW headquarters, union members, and federal authorities

would not be aware of the embezzlement conspiracy.

25. In or about June 2016, Vance Pearson and **Gary Jones** submitted voucher

requests to UAW headquarters in connection with a UAW conference in California.

A UAW accounting official challenged the propriety of an expense of $19,041.33

for "outside vendors" in one of the requests.  On or about June 8, 2016, in an

interstate e-mail message, at the direction of **Gary Jones**, Vance Pearson falsely

told the UAW accounting official that the $19,041.33 expense had been for

"meals."  In truth and in fact, however, the $19,041.33 expense included $5,670.00

for golf green fees, $375.00 for tips for caddies, and $10,087.92 for golf clothing,

pants, shoes, hats, gloves, shorts, jackets, golf balls, sunglasses, and other

merchandise that had been purchased by nine UAW officials, including **Gary Jones**

and Vance Pearson.

26. In or about 2016, **Gary Jones**, UAW Official B, UAW Official D,

Edward N. Robinson, and Vance Pearson received sets of custom-fit Titleist golf

clubs through the Club at Porto Cima in Sunrise Beach, Missouri, at the cost of

thousands of dollars.  The conspirators used UAW funds to pay for the golf clubs,

but they fraudulently concealed the use of UAW money for the purchase of the golf

clubs by hiding the expenditures within the costs of a UAW Region 5 conference held in September 2016 in Lake of the Ozark, Missouri.

27. In or about December 2015, **GARY JONES** ordered $13,046.91 in cigars from the Gary's Sales company located in Parker, Arizona. The order by **GARY JONES** included 12 boxes of Ashton Double Magnum cigars at $268.00 per box (totaling $3,216) and 12 boxes of Ashton Monarch Tubos cigars at $274.50 a box (totaling $3,294). **GARY JONES** ordered these cigars at the request of UAW Official B and, in large part, for the use of UAW Official B. The cost of the cigars was concealed within the expenses of a UAW Region 5 conference, and the UAW headquarters in Detroit that paid for the conference was never told that the purported expenses of the conference included over $13,000 in cigars.

28. Other relevant conduct: While a UAW official, **Gary Jones** took over $50,000 from the "Five Fellowship Fund" bank account, sometimes referred to as a "flower fund," and from the "Members in Solidarity" bank account, and used the money for his own personal expenses unrelated to the ostensible purposes of the two funds.

<p style="text-align:center">*        *        *</p>

## Conspiracy to Defraud the United States

The following facts are a sufficient and accurate basis for defendant **Gary Jones'** guilty plea to Count Two of the Second Superseding Information:

29. Between 2014 and 2018, **Gary Jones** agreed and conspired with Edward N. Robinson, Vance Pearson, and other individuals and entities, both known and unknown, to impede, impair, obstruct, and defeat the United States Internal Revenue Service from ascertaining, computing, assessing, and collecting taxes.

30. It was part of that conspiracy that **Gary Jones**, Edward N. Robinson, Vance Pearson, and others concealed hundreds of thousands of dollars diverted from the UAW, UAW Southwest CAP, and the UAW Midwest CAP.

31. It was part of that conspiracy that **Gary Jones**, Edward N. Robinson, Vance Pearson, and others received compensation from the UAW, the UAW Midwest CAP, and UAW Southwest CAP, which compensation was falsely and fraudulently omitted from the IRS Form 990 returns filed by the UAW, the UAW Southwest CAP, and the UAW Midwest CAP.

32. **Gary Jones**, Edward N. Robinson, and others failed to report the compensation they received from their scheme to divert funds from the UAW, the UAW Southwest CAP, and the UAW Midwest CAP on their Form 1040 tax returns filed with the Internal Revenue Service.

### Overt Acts

In furtherance of the conspiracy, and to effect the objects thereof, the defendant and his co-conspirators committed and caused to be committed the

- 15 -

following overt acts, among others, in the Eastern District of Michigan, and elsewhere:

33. Between January 2017 and December 2017, **Gary Jones**, Edward N. Robinson, Vance Pearson, and others prepared, approved, and submitted fraudulent Payment Request Forms to the UAW's international accounting staff requesting that the UAW disburse funds to Renaissance Palm Springs Hotel, Loews Coronado Bay Resort, Lodge of Four Seasons, and Thousand Hills Golf Resort. The purported purpose of the requests was for legitimate UAW business expenses related to training conferences. In reality, the forms fraudulently concealed the true purpose of the disbursements, which was to divert UAW funds for the personal benefit of high-level UAW officials. These fraudulent submissions caused UAW accounting personnel to make false accounting entries in the UAW's books and records, which were relied upon to generate financial statements and an IRS Form 990.

34. These same fraudulent submissions that caused UAW accounting personnel to make false accounting entries in the UAW's books and records and to create false financial statements, were also relied upon to generate and file LM reports with the U.S. Department of Labor.

35. Between January 2017 and December 2017, **Gary Jones**, Edward N. Robinson, Vance Pearson, and others facilitated the transfer of $539,608 in funds

- 16 -

from the UAW, the UAW Midwest CAP, and the UAW Southwest CAP to the following resorts:

- $200,000 to the Renaissance Palm Springs Hotel

- $161,941 to the Lodge of Four Seasons

- $107,447 to the Loews Coronado Bay Resort

- $70,220 to Thousand Hills Golf Resort

36. Between January 2017 and December 2017, **Gary Jones**, Edward N. Robinson, Vance Pearson, and others diverted $290,852 in UAW funds held on deposit at the aforementioned resorts for the personal benefit of themselves and other high-level UAW officials. The diverted funds were spent on the following:

- $129,336 for luxury condominiums and villas

- $46,588 for lavish restaurants

- $80,904 for golf greens fees and merchandise purchases

- $15,274 for cigars and related paraphernalia

- $18,750 for spa services, clothing, musicals, amusement park tickets

and other purchases for the personal benefit of UAW officials.

37. On or about November 5, 2018, a UAW official filed a 2017 IRS Form 990 on behalf of the UAW.  Unknown to the UAW official, the Form 990 contained the following false statements due to the actions of the conspirators, which prevented the IRS from making an accurate tax assessment with respect to funds

diverted from the UAW for the personal benefit of **Gary Jones**, Edward N. Robinson, UAW Official B, Vance Pearson, and others:

- Falsely reported the diverted income to **Gary Jones**, Edward N. Robinson, UAW Official B, Vance Pearson, and others as a legitimate business expense on the UAW's Statement of Functional Expenses

- Failed to disclose $290,852 in reportable compensation to **Gary Jones**, UAW Official B, Vance Pearson, and other key employees on Part VII – Compensation of Officers, Directors, Trustees, Key Employees, etc. related to funds diverted from the UAW.

38. Between January 2017 and December 2017, **Gary Jones**, Edward N. Robinson, UAW Official B, Vance Pearson, and others facilitated the transfer of $133,611 in funds from the UAW Midwest CAP by issuing checks to Edward N. Robinson or to cash. The checks were cashed and the proceeds were split between Edward N. Robinson, **Gary Jones**, Vance Pearson, and others for their personal benefit.

39. On or about February 24, 2018, **Gary Jones** signed and filed a 2017 IRS Form 1040 Individual Tax Return, which return failed to report income he diverted from the UAW, the UAW Southwest CAP, and the UAW Midwest CAP in 2017.

40. On or about March 18, 2018, Edward N. Robinson signed and filed a 2017 IRS Form 1040 Individual Tax Return, which return failed to report income he

diverted from the UAW, the UAW Midwest CAP, and the UAW Southwest CAP in 2017.

### C.   Other Conduct

1. During at least the period 2014 through 2016, UAW Official B directed that 100% of the UAW salaries and benefits of a large number of UAW officials and employees, nominally assigned to joint training centers with the automobile manufacturing companies, be paid for by these companies through the training centers. UAW Official B and other senior UAW officials caused the companies to pay these salaries and benefits for the UAW even though these UAW officials knew that these UAW officials and employees "assigned" to the training centers spent most of their work time performing tasks for the UAW, reported to the UAW, and enforced the companies' compliance with the collective bargaining agreements on behalf of the union.

2. UAW Official B caused the automobile manufacturing companies to pay hundreds of thousands of dollars for capital improvements, including the installation of audio-visual equipment, to the UAW's Black Lake conference facility. In this way, UAW Official B illegally caused car company funds, intended to support the three joint training centers, to be used for the benefit of the UAW.

3. UAW Official B and other senior UAW officials required the automobile manufacturing companies to pay a 7% "administrative fee" on the amount of

chargebacks paid by the companies to the UAW for the salaries and benefits of

UAW employees assigned to the three joint training centers.  UAW Official B and

other senior UAW officials caused the fee to be charged in order to benefit the

UAW with funds from the companies even though the fee had no legitimate

justification relating to the administrative costs associated with the chargebacks.

4. Because **Gary Jones** provided the information in this subsection to the

United States pursuant to a proffer agreement with the United States, the parties

agree that it should not be included in determining the defendant's guideline

calculations under U.S.S.G. §1B1.8(a).

## II.    Sentencing Guidelines

### A.    Standard of Proof

The parties agree that the Court will determine all sentencing factors by a

preponderance of the evidence.

### B.    Agreed Guideline Range

The parties agree on all sentencing factors, which factors are set forth on the

attached sentencing guideline worksheets.

The parties agree that the defendant's advisory sentencing guideline range is

**46–57 months**.  If the Court finds:

> 1.  that defendant's criminal history category is higher than reflected
>     on the attached worksheets, or

2. that the offense level should be higher because, after pleading

guilty, defendant made any false statement to or withheld

information from his probation officer; otherwise demonstrated a

lack of acceptance of responsibility for his offenses; or obstructed

justice or committed any crime,

and if any such finding results in a higher guideline range higher, the higher

guideline range becomes the agreed advisory sentencing guideline range.

## III.   Sentence

The Court will impose a sentence pursuant to 18 U.S.C. § 3553, and in doing

so must consider the sentencing guideline range.

### A.   Imprisonment

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the sentence of

imprisonment in this case may not exceed the top of the agreed guideline range.

### B.   Supervised Release

A term of supervised release, if imposed, follows the term of imprisonment.

There is no agreement on supervised release. In other words, the Court may impose

any term of supervised release up to the statutory maximum term, which in this case

is not more than three years. The agreement concerning imprisonment described

above in Paragraph 3A does not apply to any term of imprisonment that results

from any later revocation of supervised release.

### C.  Special Assessment

Defendant will pay a special assessment of $200.

### D.  Fine

There is no agreement as to fines.

### E.  Restitution

As to Count One, the Court shall order restitution to every identifiable victim

of the defendant's offense.

As to Count Two, pursuant to 18 U.S.C. § 3663, the parties agree that

restitution payable to the U.S. Department of the Treasury shall be imposed in this

matter in the amount of not less than $42,000, which figure represents additional

federal income taxes due and owing to the Internal Revenue Service by defendant

**Gary Jones** for tax years 2012 through 2018.  The restitution amount of $42,000

may be increased by any interest and assessable penalties due and owing as

calculated by the U.S. Probation department.

As part of this agreement, **Gary Jones** agrees that the $32,377 in cash seized

by the FBI on August 28, 2019 from his residence shall be deposited with the

United States District Court Clerk for the Eastern District of Michigan for

application against the restitution imposed in this case regarding Count Two.  **Gary**

**Jones** agrees to execute an Order Directing the Deposit of Funds With the Clerk of

the Court and Restraining Distribution contemporaneously with the signing of this plea agreement.

The defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. 18 U.S.C. §§ 3612(c) and 3613. If the Court imposes a schedule of payments, the defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

### F.   Preparation of Tax Forms and Calculation and Payment of Taxes Due and Owing

(i)   Not later than 14 days from entry of his guilty plea, defendant **Gary Jones** will provide the IRS Examination Division with a true and accurate IRS Form 4549 and a true and accurate IRS Form 870 for the years 2012 through 2018 inclusive by delivering a signed copies of such documents to: IRS-CI Special Agent Michael Petroske, 985 Michigan Avenue, Room 251, Detroit, Michigan 48226.

(ii)   Defendant **Gary Jones** shall further cooperate fully and in good faith with the Internal Revenue Service in determining his correct tax liability, including, any assessable penalties and applicable interest owed thereon, and shall make satisfactory arrangements with the Internal Revenue Service for payment of any unpaid taxes, penalties, and interest.

(iii)   Defendant **Gary Jones** agrees that he will not seek, request or file any claim for any refunds of any taxes, penalties or interest for the tax years 2012 through 2018, inclusive.

(iv)   Nothing in this Agreement shall limit the Internal Revenue Service in its collection of any taxes, penalties or interest due from defendant **Gary Jones**.

### G.   Forfeiture

As part of this Rule 11 plea agreement, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), the defendant agrees to forfeit his interest in any property, real or personal, constituting or derived from any proceeds traceable to a violation of 18 U.S.C. §§ 371 and 1952(a)(3), and 29 U.S.C. § 501(c), including the following:

1) approximately $81,000 from the "flower fund," also known as the 5 Fellowship Fund, of the defendant from the following bank account controlled by the defendant - UAW Federal Credit Union Account No. XXXXXX0940;

2) approximately $38,000 from the defendant's "Members in Solidarity" account from the following bank account controlled by defendant - Enterprise Bank and Trust Account No. XXXXXX8102; and

3) one set of Titleist golf clubs seized from the defendant's residence in Canton, Michigan on August 28, 2019.

All of the above-referenced assets, are hereinafter referred to as "Subject Property." The defendant acknowledges that he has agreed to forfeit the Subject Property to the United States under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461 as direct or indirect proceeds of the defendant's violations of 18 U.S.C. §§ 371 and 1952(a)(3), and 29 U.S.C. § 501(c) as alleged in Count One of the Second Superseding Information.

Following entry of this Rule 11 Plea Agreement, the defendant agrees to the entry of one or more orders of forfeiture of his interests in the Subject Property by stipulation and/or application by the United States at, or any time before, his sentencing in this case.

As part of his agreement, the defendant agrees not to contest the forfeiture of the Subject Property in any forfeiture proceeding. To the extent a third party that the defendant controls has an interest in any of the Subject Property, the defendant agrees to abandon those interests and/or to assist in obtaining release(s) of those interests. The defendant further agrees that he will not assist any third party assert a claim to any of the Subject Property in any forfeiture proceeding, that he will testify truthfully in any forfeiture proceeding involving any of the Subject Property, and that he will take whatever steps are necessary to deliver clear title to each item of Subject Property to the United States.

The defendant agrees that the forfeiture of any property consistent with this agreement shall survive the defendant, notwithstanding any abatement of the underlying criminal conviction after execution of this agreement.

In entering into this agreement with respect to forfeiture, the defendant knowingly, voluntarily, and intelligently waives any challenge to the above-described forfeiture based upon the Excessive Fines Clause of the Eighth Amendment to the United States Constitution.

The defendant also waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of forfeiture in the charging instrument, pronouncement of forfeiture at sentencing, and incorporation of forfeiture in the judgment and waives any right he may have to request a jury determine the forfeiture of his interests in the Subject Property under Rule 32.2(b)(5) of the Federal Rules of Criminal Procedure.

The defendant acknowledges that he understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives his right to challenge any failure by the court to advise him of this, pursuant to Rule 11(b)(1)(J), or otherwise, at the time his guilty plea is accepted.

The defendant agrees to unconditionally release and forever discharge the United States of America, the United States Department of Justice, the FBI, their agents, officers, employees, past and present, and all other persons, including but

- 26 -

not limited to any individual local law enforcement officers or departments or agencies assisting in any manner in the events and circumstances giving rise to the seizures described herein, from any and all actions, causes of action, suits, proceedings, debts, dues, contracts, judgments, damages, claims, and/or demands whatsoever in law or equity which the defendant his assigns, agents, officers, employees, successors, and/or heirs had, now have, or may have in connection with the seizure and detention of the seized funds.

## IV.    Cooperation Agreement

The written cooperation agreement between defendant **Gary Jones** and the government, which is dated _____, 2020, is part of this plea agreement. The government agrees to bring no additional criminal charges against defendant **Gary Jones** arising out of his involvement in the offenses charged in the Information, or for additional criminal conduct disclosed under the terms of the _____, 2020 cooperation agreement, unless the defendant withdraws his plea or breaches that cooperation agreement.

## V.    Use of Withdrawn Guilty Plea

If the Court allows defendant to withdraw his guilty plea for a "fair and just reason" pursuant to Fed. R. Crim. P. 11(d)(2)(B), defendant **Gary Jones** waives his rights under Fed. R. Evid. 410, and the government may use his guilty plea, any

statement made under oath at the change-of-plea hearing, and the factual basis statement in this plea agreement, against him in any proceeding.

## VI.  Defendant's Right to Withdraw from this Agreement

Defendant **Gary Jones** may withdraw from this agreement, and may withdraw his guilty plea, if the Court decides to impose a sentence higher than 57 months. This is the only reason for which defendant may withdraw from this agreement. The Court shall advise defendant that if he does not withdraw his guilty plea under this circumstance, the Court may impose a sentence greater than 46 months.

## VII.  Appeal Waiver

Defendant **Gary Jones** waives any right he may have to appeal his conviction on any grounds. If the defendant's sentence of imprisonment does not exceed 57 months, the defendant also waives any right he may have to appeal his sentence, including the fine and amount of restitution imposed, on any grounds.

Nothing in this waiver bars a timely claim of ineffective assistance of counsel on appeal or by collateral relief under 28 U.S.C. § 2255.

## VIII.  Consequences of Withdrawal of Guilty Plea or Vacation of Conviction

If the defendant is allowed to withdraw his guilty plea or if any conviction entered pursuant to this agreement is vacated, the Court shall, on the government's request, reinstate any charges that were dismissed as part of this agreement. If

additional charges are filed against defendant within six months after the date the

order vacating defendant's conviction or allowing his to withdraw his guilty plea

becomes final, which charges relate directly or indirectly to the conduct underlying

the guilty plea or to any conduct reflected in the attached worksheets, defendant

waives his right to challenge the additional charges on the ground that they were not

filed in a timely manner, including any claim that they were filed after the

limitations period expired.

## IX. Parties to Plea Agreement

Unless otherwise indicated, this agreement does not bind any government

agency except the United States Attorney's Office for the Eastern District of

Michigan.

## X. Scope of Plea Agreement

This agreement, which includes all documents that it explicitly incorporates,

is the complete agreement between the parties. This agreement supersedes all other

promises, representations, understandings and agreements between the parties

concerning the subject matter of this plea agreement that were made at any time

before the guilty plea is entered in court. Thus, no oral or written promises made by

the government to defendant or to the attorney for the defendant at any time before

defendant pleads guilty are binding except to the extent they have been explicitly

incorporated into this agreement.

Notwithstanding the previous paragraph, if defendant has entered into a written proffer agreement or a written cooperation agreement with the government, this plea agreement does not supersede or abrogate the terms of any such prior written agreement.

This agreement also does not prevent any civil or administrative actions against defendant, or any forfeiture claim against any property, by the United States or any other party.

## XI.   Acceptance of Agreement by Defendant

This plea offer expires unless it has been received, fully signed, in the Office of the United States Attorney by 5:00 P.M. on February 28, 2020. The government reserves the right to modify or revoke this offer at any time before defendant pleads guilty.

Matthew Schneider
United States Attorney


_____                    _____
David A. Gardey                                    Steven Cares
Assistant United States Attorney                   Assistant United States Attorney
Chief, Public Corruption Unit


Date: 2-24-2020

- 30 -

By signing below, defendant acknowledges that he has read (or has been read) this entire document, understands it, and agrees to its terms. He also acknowledges that he is satisfied with his attorney's advice and representation. Defendant agrees that he has had a full and complete opportunity to confer with his lawyers, and has had all of his questions answered by his lawyers.

_____
J. Bruce Maffeo
Attorney for Defendant

Date: 2.24.2020

_____
Gary Jones
Defendant

Date: 2/24/2020

- 31 -

By signing below, defendant acknowledges that he has read (or has been read) this entire document, understands it, and agrees to its terms. He also acknowledges that he is satisfied with his attorney's advice and representation. Defendant agrees that he has had a full and complete opportunity to confer with his lawyers, and has had all of his questions answered by his lawyers.


_____          _____
J. Bruce Maffeo                                          Gary Jones
Attorney for Defendant                              Defendant

Date:                                                         Date:

| Defendant: | Gary Jones | Count: | 1 |
|---|---|---|---|
| Docket No.: | | Statute(s): | 18 USC 371 (29 USC 501(c)) |

## WORKSHEET A (Offense Levels)

Complete one Worksheet A for each count of conviction (taking into account relevant conduct and treating each stipulated offense as a separate count of conviction) before applying the multiple-count rules in U.S.S.G. ch. 3, pt. D.  However, in any case involving multiple counts of conviction, if the counts of conviction are all "closely related" to each other within the meaning of U.S.S.G. § 3D1.2(d), complete only a single Worksheet A.

**1.    BASE OFFENSE LEVEL AND SPECIFIC OFFENSE CHARACTERISTICS (U.S.S.G. ch. 2)**

| Guideline Section | Description | Levels |
|---|---|---|
| 2B1.1(a)(2) | Embezzlement of union funds by a union officer | 6 |
| 2B1.1(b)(1) | Loss amount > $550,000 but ≤ $1,500,000 | 14 |
| 2B1.1(b)(10) | Sophisticated means | +2 |
| | | |
| | | |

**2.    ADJUSTMENTS (U.S.S.G. ch. 3, pts. A, B, C)**

| Guideline Section | Description | Levels |
|---|---|---|
| 3B1.3 | Abuse of position of trust | +2 |
| 3B1.1 | Leader/Organizer | +2 |
| | | |
| | | |

A-1

| Defendant: | Gary Jones | Count: | 1 |
|---|---|---|---|
| Docket No.: | | Statute(s): | 18 USC 371 (29 USC 501(c)) |

**3.    ADJUSTED OFFENSE LEVEL**

Enter the sum of the offense levels entered in Items 1 and 2.  If this Worksheet A does not cover every count of conviction (taking into account relevant conduct and treating each stipulated offense as a separate count of conviction), complete one or more additional Worksheets A and a single Worksheet B.

<div style="border:1px solid">26</div>

**********************

*If this is the only Worksheet A, check this box and skip Worksheet B.*   ✓

*If the defendant has no criminal history, check this box and skip Worksheet C.*   ✓

| Defendant: | Gary Jones | Count: | 1 |
|---|---|---|---|
| Docket No.: | | Statute(s): | 18 USC 371 (29 USC 501(c)) |

# WORKSHEET B (Multiple Counts)

## Instructions (U.S.S.G. ch. 3, pt. D):

- Group the counts of conviction into distinct Groups of Closely Related Counts. "All counts involving substantially the same harm shall be grouped together into a single Group." (*See* U.S.S.G. § 3D1.2.)

- Determine the offense level applicable to each Group. (*See* U.S.S.G. § 3D1.3.)

- Determine the combined offense level by assigning "units" to each Group as follows (*see* U.S.S.G. § 3D1.4):

  - assign 1 unit to the Group with the highest offense level,
  - assign 1 unit to each additional Group that is equally serious as, or 1 to 4 levels less serious than, the Group with the highest offense level,
  - assign ½ unit to each Group that is 5 to 8 levels less serious than the Group with the highest offense level,
  - assign no units to each Group that is 9 or more levels less serious than the Group with the highest offense level.

1. **GROUP ONE:** COUNT(S) ___1 & 2___
   ADJUSTED OFFENSE LEVEL

2. **GROUP TWO:** COUNT(S) _____
   ADJUSTED OFFENSE LEVEL

3. **GROUP THREE:** COUNT(S) _____
   ADJUSTED OFFENSE LEVEL

4. **GROUP FOUR:** COUNT(S) _____
   ADJUSTED OFFENSE LEVEL

5. **TOTAL UNITS**

| 26 | 1 unit |
|---|---|
| | unit |
| | unit |
| | unit |

| units |
|---|

| Defendant: | Gary Jones | Count: | 1 |
|---|---|---|---|
| Docket No.: | | Statute(s): | 18 USC 371 (29 USC 501(c)) |

6. **INCREASE IN OFFENSE LEVEL**

   1 unit  $\longrightarrow$  no increase        2 1/2 – 3 units  $\longrightarrow$  add 3 levels

   1 1/2 units  $\longrightarrow$  add 1 level     3 1/2 – 5 units  $\longrightarrow$  add 4 levels

   2 units  $\longrightarrow$  add 2 levels            > 5 levels  $\longrightarrow$  add 5 levels

   $\boxed{1}$

7. **ADJUSTED OFFENSE LEVEL OF GROUP WITH THE HIGHEST OFFENSE LEVEL**

   $\boxed{26}$

8. **COMBINED ADJUSTED OFFENSE LEVEL**

   Enter the sum of the offense levels entered in Items 6 and 7.

   $\boxed{26}$

| Defendant: | Gary Jones | Count: | 1 |
|---|---|---|---|
| Docket No.: | | Statute(s): | 18 USC 371 (29 USC 501(c)) |

# WORKSHEET C (Criminal History)

Date of defendant's commencement of the instant offense (taking into account relevant conduct and stipulated offenses): _____

## 1.    PRIOR SENTENCES

### Prior Sentence of Imprisonment Exceeding 13 Months (U.S.S.G. §§ 4A1.1(a)):                                                    3 POINTS

Enter 3 points for each prior adult sentence of imprisonment exceeding one year and one month that either (1) was imposed within 15 years of the defendant's commencement of the instant offenses (taking into account relevant conduct and stipulated offenses) or (2) resulted in the defendant's confinement during any part of that 15-year period. (*See* U.S.S.G. §§ 4A1.1(a), 4A1.2(d)(1), (e)(1).)

### Prior Sentence of Imprisonment of at Least 60 Days (U.S.S.G. §§ 4A1.1(b)):                                                    2 POINTS

Enter 2 points for each prior sentence of imprisonment of at least 60 days not counted under U.S.S.G. § 4A1.1(a) that either (1) resulted from an offense committed after the defendant turned 18 and was imposed within 10 years of the defendant's commencement of the instant offense (taking into account relevant conduct and stipulated offenses) (*see* U.S.S.G. §§ 4A1.1(b), 4A1.2(e)(2)) or (2) resulted from an offense committed before the defendant turned 18 and resulted in the defendant's confinement during any part of the 5-year period preceding the defendant's commencement of the instant offense (*see* U.S.S.G. §§ 4A1.1(b), 4A1.2(d)(2)(A)).

### Other Prior Sentences (U.S.S.G. §§ 4A1.1(c)):                                                    1 POINT

Enter 1 point for each prior sentence not counted under U.S.S.G. § 4A1.1(a) or (b) that either (1) resulted from an offense committed after the defendant turned 18 and was imposed within 10 years of the defendant's commencement of the instant offense (taking into account relevant conduct and stipulated offenses) (*see* U.S.S.G. §§ 4A1.1(c), 4A1.2(e)(2)) or (2) resulted from an offense committed before the defendant turned 18 and was imposed within 5 years of the defendant's commencement of the instant offense (taking into account relevant conduct and stipulated offenses) (*see* U.S.S.G. §§ 4A1.1(c), 4A1.2(d)(2)(B)). NOTE: No more than 4 points may be added under this item.

| Defendant: | Gary Jones | Count: | 1 |
| Docket No.: | | Statute(s): | 18 USC 371 (29 USC 501(c)) |

| Date of Imposition | Status* | Offense | Sentence | Release Date** | Points |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

\*      If the defendant committed the offense before turning 18, indicate whether he or she was sentenced as a juvenile (J) or as an adult (A).

\*\*      A release date is required in only two situations:  (1) when a sentence covered under U.S.S.G. § 4A1.1(a) was imposed more than 15 years before the defendant's commencement of the instant offense (taking into account relevant conduct and stipulated offenses) but resulted in his or her confinement during any part of that 15-year period; or (2) when a sentence counted under U.S.S.G. § 4A1.1(b) was imposed for an offense committed before the defendant turned 18 but resulted in his or her confinement during any part of the 5-year period preceding his or her commencement of the instant offense (taking into account relevant conduct and stipulated offenses).

C-2

| Defendant: | Gary Jones | Count: | 1 |
|---|---|---|---|
| Docket No.: | | Statute(s): | 18 USC 371 (29 USC 501(c)) |

**2. COMMISSION OF INSTANT OFFENSE WHILE UNDER PRIOR SENTENCE (U.S.S.G. § 4A1.1(d))**

Enter 2 points if the defendant committed any part of the instant offense (taking into account relevant conduct and stipulated offenses) while under any criminal justice sentence having a custodial or supervisory component, including probation, parole, supervised release, imprisonment, work release, and escape status. (*See* U.S.S.G. §§ 4A1.1(d), 4A1.2(m), (n).) List the type of control and identify the sentence from which it resulted.

**3. PRIOR SENTENCE RESULTING FROM CRIME OF VIOLENCE (U.S.S.G. § 4A1.1(e))**

Enter 1 point for each prior sentence resulting from a conviction for a crime of violence that did not receive any points under U.S.S.G. § 4A1.1(a), (b), or (c) because such sentence was considered related to another sentence resulting from a conviction for a crime of violence. But enter no points where the sentences are considered related because the offenses occurred on the same occasion. (*See* U.S.S.G. §§ 4A1.1(e), 4A1.2(p).) Identify the crimes of violence and briefly explain why the cases are considered related. NOTE: No more than 3 points may be added under this item.

**4. TOTAL CRIMINAL HISTORY POINTS**

Enter the sum of the criminal history points entered in Items 1-4.

0

**5. CRIMINAL HISTORY CATEGORY**

| Total Criminal History Points | Criminal History Category |
|---|---|
| 0-1 | I |
| 2-3 | II |
| 4-6 | III |
| 7-9 | IV |
| 10-12 | V |
| ≥13 | VI |

I

| Defendant: | Gary Jones | Count: | 1 |
|---|---|---|---|
| Docket No.: | | Statute(s): | 18 USC 371 (29 USC 501(c)) |

## WORKSHEET D (Guideline Range)

1.  **(COMBINED) ADJUSTED OFFENSE LEVEL**
    Enter the adjusted offense level entered in Item 3 of Worksheet A or the combined adjusted offense level entered in item 8 of Worksheet B.

    > 26

2.  **ADJUSTMENT FOR ACCEPTANCE OF RESPONSIBILITY (U.S.S.G. § 3E1.1)**

    > -3

3.  **TOTAL OFFENSE LEVEL**

    Enter the difference between Items 1 and 2.

    > 23

4.  **CRIMINAL HISTORY CATEGORY**

    Enter "I" if the defendant has no criminal history.  Otherwise, enter the criminal history category entered in Item 6 of Worksheet C.

    > I

5.  **CAREER OFFENDER/CRIMINAL LIVELIHOOD/ARMED CAREER CRIMINAL/DANGEROUS SEX OFFENDER (U.S.S.G. ch. 4, pt. B)**
    a.  <u>Total Offense Level:</u> If the career offender provision (U.S.S.G. § 4B1.1), the criminal livelihood provision (U.S.S.G. § 4B1.3), the armed career criminal provision (U.S.S.G. § 4B1.4), or the dangerous sex offender provision (U.S.S.G. § 4B1.5) results in a total offense level higher than the total offense level entered in Item 3, enter the higher offense level total.

    > NA

    b.  <u>Criminal History Category:</u>  If the career offender provision (U.S.S.G. § 4B1.1), the armed career criminal  provision (U.S.S.G. § 4B1.4), or the dangerous sex offender provision (U.S.S.G. § 4B1.5) results in a criminal history category higher than the criminal history category entered in Item 4, enter the higher criminal history category.

    > NA

6.  **GUIDELINE RANGE FROM SENTENCING TABLE (U.S.S.G. CH. 5, PT. A)**
    Enter the guideline range in the Sentencing Table (*see* U.S.S.G. ch. 5, pt. A) produced by the total offense level entered in Item 3 or 5.a and the criminal history category entered in Item 4 or 5.b.

    > 46-57

    months

| Defendant: | Gary Jones | Count: | 1 |
|---|---|---|---|
| Docket No.: | | Statute(s): | 18 USC 371 (29 USC 501(c)) |

7.    **STATUTORY RESTRICTIONS ON OR SUPERSESSION OF GUIDELINE RANGE**
If the maximum sentence authorized by statute is below, or a minimum sentence required by statute is above, the guideline range entered in Item 6, enter either the guideline range as restricted by statute or the sentence required by statute. (*See* U.S.S.G. § 5G1.1.) If the sentence on any count of conviction is required by statute to be consecutive to the sentence on any other count of conviction, explain why.

NA

months

| Defendant: | Gary Jones | Count: | 1 |
|---|---|---|---|
| Docket No.: | | Statute(s): | 18 USC 371 (29 USC 501(c)) |

# WORKSHEET E (Authorized Guideline Sentences)

1. **PROBATION**

   a. Imposition of a Term of Probation (U.S.S.G. § 5B1.1)

   [X]  1. Probation is not authorized by the guidelines (minimum of guideline range ≥ 10 months or statute of conviction is a Class A or a Class B felony). If this box is checked, go to Item 2 (Split Sentence).

   [ ]  2. Probation is authorized by the guidelines (minimum of guideline range = zero months).

   [ ]  3. Probation is authorized by the guidelines, provided the court imposes a condition or combination of conditions requiring intermittent confinement, community confinement, or home detention satisfying the minimum of the guideline range (minimum of guideline range > 0 months but ≤ 9 months).

   b. Length of Term of Probation (U.S.S.G. § 5B1.2)

   [ ]  1. At least 1 year but not more than 5 years (total offense level ≥ 6)

   [ ]  2. No more than 3 years (total offense level < 6).

   c. Conditions of Probation (U.S.S.G. § 5B1.3)

2. **SPLIT SENTENCE (U.S.S.G. § 5C1.1(C)(2), (D)(2))**

   [X]  a. A split sentence is not authorized (minimum of guideline range = 0 months or ≥ 15 months).

   [ ]  b. A split sentence is authorized (minimum of guideline range > 0 months but ≤ 12 months). The court may impose a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention for imprisonment, provided that at least one-half of the minimum of the guideline range is satisfied by imprisonment (if the minimum of the guideline range is 10 or 12 months), or that at least one month is satisfied by imprisonment (if the minimum of the guideline range is 1, 2, 3, 4, 6, 8, or 9 months). The authorized length of the term of supervised release is set forth below in Item 4.b.

3. **IMPRISONMENT (U.S.S.G. CH. 5, PT. C)**

   A term of imprisonment is authorized by the guidelines if it is within the applicable guideline range (entered in Item 6 of Worksheet D). (*See* U.S.S.G. § 5C1.1.)

| Defendant: | Gary Jones | Count: | 1 |
|---|---|---|---|
| Docket No.: | | Statute(s): | 18 USC 371 (29 USC 501(c)) |

4. **SUPERVISED RELEASE (U.S.S.G. ch 5., pt. D)**

    a. <u>Imposition of a Term of Supervised Release</u> (U.S.S.G. § 5D1.1)

        The court must impose a term of supervised release if it imposes a term of imprisonment of more than one year, or if it is required to do so by statute. The court may impose a term of supervised release if it imposes a term of imprisonment of one year or less.

    b. <u>Length of Term of Supervised Release</u>  (U.S.S.G. § 5D1.2)

        1. At least 2 years but not more than 5 years, where the count of conviction is a Class A or a Class B felony, i.e., an offense carrying a maximum term of imprisonment ≥ 25 years.

        [X] 2. At least 1 year but not more than 3 years, where the count of conviction is a Class C or a Class D felony, i.e., an offense carrying a maximum term of imprisonment ≥ 5 years but < 25 years.

        3. 1 year, where the count of conviction is a Class E felony or a Class A misdemeanor,  i.e., an offense carrying a maximum term of imprisonment > 6 months but < 5 years.

        4. The statute of conviction requires a minimum term of supervised release of      years.

    c. Conditions of Supervised Release  (U.S.S.G. § 5D1.3)

        The court must impose certain conditions of supervised release and may impose other conditions of supervised release.

5. **RESTITUTION (U.S.S.G. § 5E1.1)**

    [X] 1. The court *must* order full restitution to the victim(s) of the offense(s) of conviction. (*See* 18 U.S.C. §§ 3556, 3663A, 3664.)  The court will determine who the victims are and their restitution amounts.

        2. The court *must* order full restitution to the victim(s) of the offense(s) of conviction. (*See* 18 U.S.C. §§ 3556, 3663A, 3664)  The parties agree that full restitution is $ _____.

| Defendant: | Gary Jones | Count: | 1 |
|---|---|---|---|
| Docket No.: | | Statute(s): | 18 USC 371 (29 USC 501(c)) |

3. The parties agree that the court *may* order restitution to the victim(s) of the offense(s) of conviction in any amount up to and including $_____. (*See* 18 U.S.C. §§ 3663(a)(3), 3664.)

4. The parties agree that the court *may also* order restitution to persons other than the victim(s) of the offense(s) of conviction in any amount up to and including $_____. (*See* 18 U.S.C. §§ 3663(a)(1)(A), 3663A(a)(3), 3664.)

5. Restitution is not applicable.

## 6. FINE (U.S.S.G. § 5E1.2)

a. Fines for Individual Defendants

The court must impose a fine unless "the defendant establishes that he [or she] is unable to pay and is not likely to become able to pay any fine." (*See* U.S.S.G. § 5E1.2(a).) Generally, the fine authorized by the guidelines is limited to the range established in the Fine Table. (*See* U.S.S.G. § 5E1.2(b).) However, there are exceptions to this general rule. (*See* U.S.S.G. § 5E1.2(b), (c)(4).)

b. Fine Range from Fine Table (U.S.S.G. § 5E1.2(c)(3))

| **Minimum Fine** | **Maximum Fine** |
|---|---|
| $20,000 | $200,000 |

E-3

| Defendant: | Gary Jones | Count: | 1 |
|---|---|---|---|
| Docket No.: | | Statute(s): | 18 USC 371 (29 USC 501(c)) |

7. **SPECIAL ASSESSMENT(S) (U.S.S.G. § 5E1.3)**
   The court must impose a special assessment on every count of conviction. The special assessments for individual defendants are:
   - $100.00 for every count charging a felony ($400 for a corporation),
   - $25.00 for every count charging a Class A misdemeanor ($125 for a corporation),
   - $10.00 for every count charging a Class B misdemeanor ($50 for a corporation), and
   - $5.00 for every count charging a Class C misdemeanor or an infraction ($25 for a corporation).

   The defendant must pay a special assessment or special assessments in the total amount of $200.

8. **FORFEITURE (U.S.S.G. § 5E1.4)**

   [X] Assets of the defendant will be forfeited.

   [ ] Assets of the defendant will not be forfeited.

9. **ADDITIONAL APPLICABLE GUIDELINES, POLICY STATEMENTS, AND STATUTES**

   List any additional applicable guideline, policy statement, or statute.

10. **UPWARD OR DOWNWARD DEPARTURE (U.S.S.G. ch. 5, pts. H & K)**
    List any applicable aggravating or mitigating circumstance that might support a term of imprisonment above or below the applicable guideline range.

(Rev. April 2014)