UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

     vs.

                                    CRIMINAL NO.: 19-20726

GARY JONES,

       Defendant.                    HON. PAUL D. BORMAN

## DEFENDANT'S SENTENCING MEMORANDUM

Defendant Gary Jones is scheduled for sentencing before Your Honor on June 10, 2021, pursuant to his guilty plea to a two count prosecutor's information charging him with conspiracy to embezzle union funds & use of a facility of interstate commerce to aid racketeering (Count One) and conspiracy to defraud the United States (Count Two). As set forth more fully below, the defense respectfully submits that Jones's early and complete acceptance of responsibility, supplemented by the government's motion pursuant to U.S.S.G. §5K1.1 and the various factors set forth in 18 U.S.C. §3553(a), support a significant downward departure from the sentencing guidelines range jointly stipulated by the parties and independently confirmed by the presentence officer.

## 1. **Background of the Case**

As an initial matter defense counsel has reviewed with Jones the commendably thorough presentence report ("PSR") issued in this case, and we have no objection to it with the exception of several changes that were discussed with and agreed to by the government and incorporated in the addendum. As set forth therein, Jones served as president of the International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America ("UAW" or "the

Union") from June 2018 to November 2019 when he voluntarily stepped down from that position. Before his election as UAW president, Jones served from 2012 on as the Director of Region 5, which covered UAW members west of the Mississippi River. The criminal conduct to which Jones pleaded guilty is encompassed by the two charges contained in the information and include: (1) his approval of the submission of bills to the UAW for annual conferences held by Region 5 that concealed personal expenses incurred at those events by various UAW officials, including Jones, referred to generally as the "Master Account" scheme, and (2) his receipt of cash, totaling approximately $45,000 over the course of several years, from Robinson who submitted duplicate bills for conference-related expenses that previously had been paid by the UAW. Jones failed to report the value of the personal expenses he received, as well as the cash on his tax returns for the relevant years, along with money he improperly diverted from donations contributed by UAW members ostensibly to defray election expenses. Jones cooperated fully with the government in determining the resulting tax deficiency, approximately $40,000, and has agreed to make full payment to the IRS as well as the entry of a forfeiture order and a payment plan for the additional restitution sought by the government.

Several additional points warrant consideration, none of which we believe will be contested by the government. First, the conduct encompassed by the charges to which Jones pleaded guilty occurred primarily *before* his election as UAW president in 2018. Second, that conduct, in the main, involved his continuation of practices previously put in place by others and with the knowledge and acquiescence of other senior UAW officials, including Jim Wells who served as Director of Region 5 until his death, and in the case of the Master Account scheme, Dennis Williams who was the UAW's Secretary Treasurer until his election as UAW President. And third, the total amount of loss agreed to between the parties includes some expenses that arguably would have been

LEGAL\52546103\1

legitimately incurred had they been reported accurately, with the balance of unsupported (and unreported) personal expenses accruing to the benefit of numerous high-level UAW officials who received the majority of the proceeds. *Rule 11 Plea Agreement*, ECF No. 42, Cr. Action. No. 19-20726), ¶ 22 (E.D. Mich. June 3, 2020).

To be clear, none of this is intended to detract from the seriousness of Jones's criminal conduct, and its impact on the Union of which he was a member for his entire adult life. After the execution of a search warrant at his home in August 2019, Jones voluntarily stepped down as UAW president in November of that year after successfully leading the Union through a 40 day strike against General Motors, which was the longest in recent history and resulted in precedent-setting gains for the UAW members employed by GM and the other two leading automobile manufacturers whose contract negotiations immediately followed. *See G.M. Workers Approve Contract and End U.A.W. Strike,* https://www.nytimes.com/2019/10/25/business/gm-contract.html.

After leaving his position as UAW president, and in advance of the return of criminal charges, Jones entered into discussions with the government to resolve its investigation. As the government is expected to confirm in its sentencing submission, over the ensuing months and continuing through the present, Jones voluntarily has met or spoken with the government repeatedly during which he accepted full responsibility for his actions, candidly answered all of the questions put to him, and shared his encyclopedic knowledge of the Union gained as a result of his forty plus years of membership. Shortly following the public revelation of Jones's plea and cooperation, it was publicly reported that the UAW had agreed to engage the government in a long overdue effort to reach a mutually acceptable set of procedures that would insure against the return of the abuses revealed in the wake of the now years-long federal investigation into the

Union. *See UAW meets with feds to avoid racketeering takeover, oversight,*

https://www.detroitnews.com/story/business/autos/2020/06/30/uaw-meets-feds-avert-takeover-amid-corruption-scandal/3284540001. As the Court of course is aware, those discussions

ultimately resulted in the entry of a court-ordered consent decree that implemented a series of

reform measures. *See Consent Decree,* ECF No. 10,  Civ. Action No. 20-13293 (E.D. Mich. Jan.

29, 2021).

## 2.  <u>Jones's Personal History</u>

As mentioned earlier, the instant conviction brings to an unfortunate end Jones's forty-four year

membership in the UAW. In his letter to the Court, Jones summarizes his history in the Union,

which he credits for enabling him to gain a college education for himself as well as his two

daughters. Letter from Gary Jones to the Hon. Paul D. Borman. (Jones's letter is attached in

Exhibit A with other letters submitted on his behalf in the order in which they are referenced (if

at all) in this submission.)

Jones first joined the Union in 1975, one year after graduating high school, and worked on the

assembly line at the Ford glass plant in Tulsa. Jones later ran for local union office and was

elected trustee after which he was elected for two terms as financial secretary. While working

full-time *and* raising a young family, Jones also attended college at the University of Tulsa at

night and graduated with a Bachelor of Science degree in Business Administration in 1989. The

following year, Jones was offered and accepted a position in the UAW's accounting department

and moved to Detroit. He remained there with his wife and their two daughters, Bridget and

Tricia, in a series of positions until 2003 when Wells asked Jones to move to St. Louis to become

his assistant. Jones was elected to replace Wells in 2012 after the latter's unexpected death and

remained in that position until 2018 when Jones was elected president of the UAW.

In her letter to Your Honor, Jones's wife, Cindy, discusses his life-long involvement in the UAW

and its place in their lives:

> Being a Ford man all his life, he was excited to be a part of the Ford family. It was also an instant attraction for him to learn union protocol and he could not learn fast enough. His desire to learn more and use what he learned is what lead him to the ladder he would climb for the next 45 years.
>
> In the meantime, we had not just 1 beautiful daughter, but was blessed with a second beautiful daughter 3 years later. Gary is a great husband, dad, son and son in law always trying to balance a full time job, an occasional part time job, college classes (he also attended Tulsa University for 10 years to get his degree) and sometimes a too demanding of his time, wife.
>
> ***
>
> Gary worked hard to climb that ladder on his way to Detroit for our first stint from 1990 to 2004 working in many different departments within the UAW. While at the same time trying to be on the scene as a parent. He instilled both girls to always strive to do their best, to honor and respect those in charge, cherish friendship and if they did something stupid to be up front with us. Therefore, we had very few bumps in the road and were blessed that both of our girls graduated from Michigan State University in 4 years. Our youngest received her Master's in Education at Wayne State.
>
> ***
>
> We spent 14 years in Region 5 where Gary was able to make great progress in getting younger adults and more women involved with the UAW, striving at the same time to increase all members knowledge of health and safety and all aspects of their union. When Gary was elected Director, women and young adults were encouraged to get involved with their locals. Gary asked the retirees to once again take a more active role and mentor the new members.

Letter (undated) from Cindy Jones to the Hon. Paul D. Borman.

To similar effect, Jones's younger daughter, Tricia, and her husband, Michael, share their

observations in their letter:

LEGAL\52546103\1

We know he doesn't take the charges lightly, nor the impact on the UAW and our family. I have spent my life as part of the UAW family and my immediate family made sacrifices so he could work tirelessly and ensure the workers' rights were taken care of. While my Dad worked hard to attend every sporting event and family celebration, this wasn't always possible because of work, though he would call immediately after to find out how things went. We uprooted our family to move to Michigan at a critical point in my sister's and my life; she was starting high school and myself middle school. Saying goodbye to your childhood friends and working to make new friends at this level is terrifying. My parents did everything possible to make it a smooth transition, including bringing my sister up early to try out for sports and finding coworkers that had children who could show us around. We did this so he could serve the UAW further--he and my Mom have since uprooted themselves twice more as he continued to serve the UAW. The biggest sacrifice for me was when my parents moved from Michigan to Missouri so he could serve Region 5 directly. I was already in the next phase of my life with a career and had met my future husband and chose to stay. This was extremely hard on all of us, however we knew that he was needed and helping Region 5 helped all union members and blue collar workers beyond the UAW as well. The words of praise sung by members when I met them made these sacrifices feel worthwhile. They'd always end talking to me by thanking me for sharing him and "I just can't say thanks enough." or "I can't say enough good things about your Dad." These were common refrains whenever we would meet anyone under his leadership."

Letter dated August 1, 2020, from Tricia and Michael Ziegler to the Hon. Paul D. Borman.

Nor does Jones's family stand alone in their views of Jones's contributions to the UAW. For example, Barbara Brady, a 25-year UAW member and Chrysler employee, provides the following assessment of Jones as a fellow UAW member and officer:

Missouri lost two Chrysler assembly plants in 2008. Since my job title was Benefits Rep. I was kept on to assist the active members with relocation and to retire the members that were eligible. I worked out of the Union hall from 2009 until the flood of 2015 which destroyed the building and contents. Gary's first reaction was to quickly assist the 7000 UAW retirees that were left stranded due to the flood. We were in need of a place to have meetings and an office to conduct business. He had an office prepared for us the next day at the Region. In addition the auditorium was available to all three locals affected for their monthly meetings. Along with my relocation came an endless parade of retirees and 40 to 50 additional phone calls per day. I knew that I had a heavy work load and a robust amount of visiting retirees and felt like this might be a disruption to daily activities at the Region. But Gary never made us feel that way. He would frequently stop by my office and chat with the retiree, asking questions and making them feel welcome. Gary truly cared about people and his actions proved it. During summer school and seminars Gary did not retreat after his presentation unlike other directors, he socialized with the active members and retirees after the sessions

LEGAL\52546103\1

were over. Christmas parties were open to everyone. While working out of the
regional office I witnessed prayer before all meals and this may seem trivial but Gary
came into everyone's office each day to say good morning. His actions made everyone
feel included.

Letter dated July 25, 2020, from Barbara Brady to Hon. Paul D. Borman.

Ms. Brady's sentiments are shared by the writers of the other letters submitted on Jones's behalf,

many of whom, like her,  have known him for most of his adult life and speak movingly of his

deep concern for his family and the Union.  However, it is the letter submitted by Jones's older

daughter, Bridget that perhaps best captures the sharp divide between Jones's history of

exemplary behavior as a husband and parent, an observant Christian and dedicated trade

unionist, and the serious crimes to which he has pleaded guilty.

> I've witnessed my dad doing amazing things for the Union. And I've had on more
> than one occasion, UAW members coming up to me and thanking me for the
> sacrifices that our family made so my dad could do the work he needed to do to for
> the better of the Union. He helped give women a voice when they didn't have one.
> He promoted women into positions of power, not because they were women but
> because they deserved the position. My dad has always been a fair and just man.
> He brought faith back into an organization that lost their way. He made it OK for
> people to speak up and challenge the mindset of "this is how it has always been
> done". Unfortunately, when it came to some of the practices from the previous
> leadership team, my dad didn't challenge them and is paying the ultimate price. My
> dad still had more to do in his position as President of the United Auto Workers.
> There was more work to be done to make the Union something to be proud of again.
> Even if it wasn't going to win him the popular vote, he knew that there were some
> things that needed to be reevaluated and fixed because they were not being done
> right. And, it is with a very heavy heart that I will never see my dad walk in the
> Labor Day parade through downtown Detroit again.

Letter dated July 15, 2020, from Bridget Marino to the Hon. Paul D. Borman.

**3.  The Sentence**

All sentencings of course present their own unique problems in striking an appropriate balance,

but Jones's, we acknowledge, is particularly difficult given his former high ranking position in the

UAW.  And while the crimes to which Jones pleaded guilty occurred primarily before his election as president, they nonetheless have had a profound impact not only on the Union's storied reputation but, just as importantly, its members' trust in their leadership.  Ironically, the original rationale for "burying" the personal expenses incurred during the conferences, which are the single largest driver of the guidelines calculation, was to avoid political embarrassment to the senior UAW officials who attended them, a list that comprised virtually all of the Union's hierarchy.  To this point, there is no serious quarrel that Jones was not the author of the Master Account scheme, and personally benefited only partially from it.[1]  Still, ultimately, it is his acquiescence in perpetuating the Scheme that goes to the failure of his leadership articulated by his daughter Bridget.

No one is more acutely aware of these facts than Jones who regrets betraying the trust placed in him by his fellow union members as well as the Union that afforded him and many others the opportunity to meaningfully provide for their families.  But having come to that realization, he has since done everything he can to remedy the harm he caused.  As previously noted, Jones relinquished office in advance of the return of charges, a step that in the undersigned's experience few others in a similar position would have taken voluntarily.  Moreover after doing so, Jones authorized his counsel to initiate discussions with the government and subsequently agreed to meet with the government during which he freely admitted his involvement and answered all questions

---

[1] As previously noted, the value of benefits that Jones personally received from the Master Account scheme is considerably less than the combined amount of personal expenses enjoyed by other attendees.  For example, Dennis Williams, who was the UAW Secretary Treasurer and then President during the same period of time, alone received benefits totaling $132,517.  *See Judgment in a Criminal Case,* ECF No. 30,  Civ. Action No. 20-20382 (E.D. Mich. May 19, 2021). But nonetheless, his estimated guideline range was 18-24 months. The value of the personal benefits to Jones is approximately $90,000.

8

put to him honestly. As again the government has confirmed in its sentencing submission, Jones throughout consistently has declined to minimize his actions or shift blame to others.

As the Court needs no reminder, 18 U.S.C. Section 3553(a) codifies the criteria to be employed in determining a fair and just sentence formally styled as "sufficient but no greater than necessary." Based on several factors set forth in § 3553(a), the Court should vary downward from the guidelines range. *See U.S. v. Grams*, 566 F.3d 683, 686-87 (6th Cir. 2009).

As required to do so by statute, the Court's sentence must be fashioned to avoid unwarranted disparities in sentencing. To assist the Court in addressing this issue, we have prepared a chart, a copy of which is annexed as Exhibit B, that lists the defendants charged and sentenced to date in the overall UAW investigation in this District and, separately, a compilation of reported cases nationwide involving a violation of 29 U.S.C. § 501(c). A review of both provides ample precedent for the Court to impose a below guidelines sentence for Jones.

Focusing initially on Robinson and Williams, whose cases are factually intertwined with Jones's, the Court imposed jail terms of 12 and 21 months, respectively. Robinson, as is expected will also be done for Jones, received a 5K1.1 motion from the government, although he concededly held a somewhat lesser position within Region 5 and cooperated earlier in the investigation. Williams, in contrast, held a series of high-level positions with the Union, ranging from Director of Region 4 to Secretary-Treasurer and President, and by any measure personally benefited the most from the conferences along with an entourage of his cronies. Notably, Williams did not cooperate with the government, and as the Court will recall from his sentencing, disclaimed specific knowledge of the Master Account scheme in defiance of the proffered testimony from several witnesses, including Jones, and, indeed, common sense.

The sentences handed down in the other UAW prosecutions are factually distinct and involve either the payment or receipt of employer funds or kickbacks, neither of which is presented in Jones's case. The sentences there range from 66 months in the case of Alphonso Iacobelli, a former high ranking employee of Fiat/Chrysler, to 60 days in the case of Virdell King, a former senior UAW official, with the balance of the cases ranging from 12 months and one day to 18 months. Two other defendants, Joseph Ashton and Michael Grimes, were convicted of receiving kickbacks involving hundreds of thousands of dollars, for steering UAW contracts to a vendor, and received sentences of 30 and 28 months respectively.

As would be expected, the 501(c) cases nationwide involve disparate facts, rendering them of questionable use in making a direct comparison to Jones. A review of them shows that the highest sentence, 78 months, was imposed on defendant Crawley, after conviction at trial. The balance of the sentences listed range from probation in the case of defendants Holden, Goodrich, and Romero, to 27 months for defendant Spates, who fled prosecution and after his arrest pleaded guilty without the benefit of a cooperation agreement.

Two other factors that the Court is required to take into account in determining Jones's sentence are of course general and specific deterrence. The latter, we respectfully submit, is inapplicable here: Jones is 64 years old, retired from the UAW, and barred from membership for life. He has no prior criminal record and presents no risk of recidivism. The concept of general deterrence is somewhat more elusive to divine, all the more so given empirical studies that suggest it is of questionable validity. *See National Institute of Justice: Five Things About Deterrence*, U.S. Department of Justice, Office of Justice Programs (May 2016)*, available at* https://www.ncjrs.gov/pdffiles1/nij/247350.pdf.

10

The final but most difficult issue to resolve is the concept of "just punishment" set forth in §3553(a)(2)(A). As the Court has explicitly noted in other of the related sentencings, the harm caused to the UAW, measured either in financial terms or the membership's loss of faith in their elected leaders, requires imposition of a sentence that adequately takes both into account. Jones, who credits the Union with enabling him to gain a college education and provide for his family, keenly appreciates the gravity of the damage to the Union caused by him and others, and while he cannot do anything to change the past, he has done everything he can to remedy the harm.

As the Court no doubt appreciates, expressions of remorse, many of them doubtlessly sincere, are frequently voiced by defendants in the run-up to sentencing. But here, Jones's words are backed up by his actions, both in resigning from office and initiating plea discussions with the government, cooperating fully at every stage of the proceedings and agreeing to continue to do so going forward in the event he is asked.  Throughout, he has never attempted to deflect his own responsibility for perpetuating the culture of casual corruption that is the hallmark of the prosecutions resulting from the overall UAW investigation. In short, Jones has done everything he can to atone for the dishonor he has brought to his family and the UAW. And we respectfully submit it is the combination of those qualities that sets Jones apart from the other defendants sentenced to date.

### 4. <u>Conclusion</u>

For the reasons set forth above and in the government's sentencing submissions, the defense respectfully submits that ample grounds exist to support a significant downward departure from the stipulated Guidelines range. Furthermore, in the event that the Court chooses to impose a sentence of incarceration, we respectfully request that Your Honor recommend to the Bureau of Prisons that Jones be housed at the Federal Prison Camp in Seagoville, Texas, because of its

proximity to his wife, Cindy, and allow Jones to surrender directly to the institution 90 days from

the date that sentence is imposed.

Respectfully Submitted,

_____/s/_____
J. Bruce Maffeo, Esq.
Cozen O'Connor
3 WTC, 175 Greenwich St., 55th Fl.
New York, NY 10007
jbmaffeo@cozen.com
(212) 883-4951


Dated: June 3, 2021

12

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 3, 2021, I electronically filed the foregoing document with the Clerk

of the Court using the ECF system, which will send notification of such filing to the following:

Counsel for the Government

/s/ *J. Bruce Maffeo*_____
J. Bruce Maffeo, Esq.

Dated: June 3, 2021

LEGAL\52546103\1

# Exhibit A

Honorable Paul Borman

United States District Judge

Eastern District of Michigan


Dear Judge Borman:


Thank you very much for taking the time to read my letter.

Beginning in 2012 when I became Director of Region 5 of the United Auto Workers ("UAW" or "the Union"), and continuing until 2017, I participated with others in a practice of not fully reporting certain expenditures made at Region 5 conferences by consolidating them without adequate detail on bills that were submitted for payment to the UAW's Secretary Treasurer's Office.  While some of the expenditures were related to union activities, others were personal in nature and did not relate to union business, and the bills that were submitted did not accurately disclose the amounts, nature and recipients of some of the expenditures. This practice existed before I became Regional Director and was continued by me when I became Regional Director with the  knowledge of other International Union Officers who attended these conferences.


After I was elected Director of Region 5, I became aware that a union official was submitting receipts for reimbursement that previously had been paid by the UAW to the UAW Midwest Cap, a labor organization affiliated with Region 5 and the UAW. I received some cash from this officer that I did not report along with the

value of some of the personal benefits I received at the UAW conferences as income on the personal tax returns that I filed during the years in question.

While I stopped participating in both practices before my election as president of the UAW in 2018, I realize that my actions violated the law as well as my sworn obligation to my fellow union members. I apologize to my UAW Family for the betrayal of their trust and pray they will forgive me. I also am deeply sorry for the heartbreak and disappointment I have caused my wife, daughters and their families and ask for their forgiveness.   I apologize for my actions to this court as well and pray all will be able to find forgiveness as my Lord and Savior Jesus Christ has done for me according to his word. (1 John 1:9)

I would like to inform the court a little about me and will be brief. I was raised in a Christian family with loving parents. I worked at various jobs during my school years along with my Church work and sports, and I stayed busy.

It was at church that I met the love of my life, Cindy. We both graduated high school in June and were married on August 26, 1974. I started work at Ford Glass in December of 1975 and was thrilled to have a union paying job. I attended almost all of the monthly union meetings and wanted to become involved. It was suggested that I run for office and with there being 3 trustees spots I figured that would be a great place to start. I barely won but was excited and incredibly happy. The next election, the financial secretary decided not to run, and I was asked to run for that spot along with a slate of other folks and we won.  I also won the next two elections.

By that time, we were blessed with 2 wonderful daughters and I had started attending college part time working on an accounting degree. I was asked by my UAW Regional Director if I would be interested in going on UAW Staff in Detroit, and after much prayer and consulting with my family we decided to go to Michigan.

In February 1990, I started work as a UAW representative doing insurance/benefit work in the Accounting Department for the UAW staff. It was then that I realized that our retirees and widows were underutilizing benefits because of lack of information and suggested changes to help alleviate that issue. In 1991 I was appointed as the Chief Accountant of the UAW and started attending the UAW Board meetings reporting on the finances of the UAW.

I stayed in that position until 1995 when the director of the Region where I was a member became Secretary-Treasurer. He appointed me as his administrative assistant and I stayed in that position for the next two Secretary-Treasurers until I was asked by Director Wells in the fall of 2003 to go to St Louis and become his assistant. I told him that I would have to talk with my family and that we would get back to him.

Cindy and I talked with our kids, both of whom had grown up by then. Tricia was graduating college and Bridget had already graduated, and we decided to move to St Louis and become Jim's assistant in Region 5, which covers 17 states almost everything west of the Mississippi river.

In St Louis, I found a completely different and challenging environment as Director Wells took a very hands-on approach to everything. After Dennis Williams was elected Secretary-Treasurer in 2010, he and Director Wells decided

3
LEGAL\52439088\1

to revive the Master Account scheme, which concealed the nature and expense of Region 5's annual conferences in Palm Springs by rolling up all of the expenses without specific detail. Almost all the UAW officers attended the Region's Palm Springs conferences along with some of the regional directors, and we used the Region's Activity Fund for that purpose. That fund derived its balances from conference fees, special event fees, but mainly the large amount came from the sale of UAW owned properties.  Around 2010, the Regions could retain 30% of the net sale proceeds of any closed local union properties and that amount was placed into their Regional Activity fund. Previously, that amount would have went to the general fund of the International Union. This change in procedure allowed the Region 5 activity fund to grow to almost 2 million dollars.

When Jim passed away at a conference at the Lake of the Ozarks in Missouri, I was unanimously endorsed by the staff to be the next Director. I was elected by the delegates in October 2012 without opposition and continued the Master Account billing practices that already had been put in place.

I was reelected in 2014 and Cindy and I were planning to retire and move to Texas after one more Director election in 2018. Some members of the UAW board, both current and past asked me to think about running for president. I initially told them they were crazy as I was not good at making speeches and Cindy and I did not want to move again. Ultimately, I agreed to put my name in the hat and was elected.

When I got to Detroit, I was amazed how things had changed. I realized after receiving briefings from our attorneys how messed up things really were and told the board that in my opinion, we had already been in the wrong enough to be

4
LEGAL\52439088\1

warranted placed under receivership and needed to take steps to correct. Along with Secretary-Treasurer Ray Curry, we started the process of changing auditors for the UAW.

The Big 3 bargaining came along and was all consuming. I was very fortunate that my wife was able to spend the nights with me at the Renaissance Center  after long days with GM and I am proud of the contract the members were able to receive from all their efforts . We had hoped to save the Lordstown plant and obtain something for our retirees, but GM would not budge.

Retiring as President of the UAW and resigning my membership from the UAW were two of the hardest decisions I ever made. That said, I knew  that I was wrong in my actions, and that continuing as president would only inflict further harm on the Union and my own family.

I have asked my Lord and Savior Jesus Christ for forgiveness and have received his mercy.

I have asked the UAW membership for their forgiveness and will ask again and again whenever the opportunity presents itself, please forgive me.

And, finally, I apologize to my wife, Cindy, and our two daughters. The past year has been difficult for all of them, especially Cindy whose health has continued to decline. We both have had many sleepless nights and can only hope and pray that the UAW will overcome the impact of the investigation and continue to grow and be a voice for working families.

 I know that the burdens I have caused my family and my UAW family will be with me for the rest of my life.

LEGAL\52439088\1

I thank you for taking the time to read this.

Sincerely,

Gary Jones

LEGAL\52439088\1

Honorable Paul Borman

United States District Judge

Eastern District of Michigan


Dear Honorable Judge Borman:


My name is Cindy Jones and I am writing this letter in support of my husband of over 46 years, Gary Jones.

Gary and I became high school sweethearts after being introduced by a mutual friend at Eastwood Baptist Church and were married in the fall after high school graduation.

While Gary was working 2 part time jobs and carrying a full load at Tulsa Junior College, we found out we were expecting our first child. Unlike what most other newly married men would think, Gary was excited not daunted by the fact that we had not even celebrated our 6-month anniversary. He just pushed on and searched for a better job with health care insurance and found that job with Ford motor company, Tulsa Glass Plant.

Being a Ford man all his life, he was excited to be a part of the Ford family. It was also an instant attraction for him to learn union protocol and he could not learn fast enough. his desire to learn more and use what he learned is what lead him to the ladder he would climb for the next 45 years.

In the meantime, we had not just 1 beautiful daughter, but was blessed with a second beautiful daughter 3 years later. Gary is a great husband , dad , son and son in law  always trying to balance a full time job , an occasional part time job , college classes ( he also attended Tulsa University for 10 years to get his degree ) and sometimes a too demanding of his time , wife.

Both girls were very much involved in sports (t-ball, softball, basketball, cheer leading and drill team) and he strived to be at all their games.  He also was able to follow in his father's footsteps and become a Mason and a Shriner. While a

Shriner he was able to help disabled and special needs children and young adults and got us as a family involved with them.

Gary worked hard to climb that ladder on his way to Detroit for our first stint from 1990 to 2004 working in many different departments within the UAW. While at the same time trying to be on the scene as a parent. He instilled both girls to always strive to do their best, to honor and respect those in charge, cherish friendship and if they did something stupid to be up front with us. Therefore, we had very few bumps in the road and were blessed that both of our girls graduated from Michigan State University in 4 years. Our youngest received her Master's in Education at Wayne State.

When we were called to the job of assistant director of Region 5 ,it was a very hard decision to leave our youngest daughter in Michigan , but she had met the love of her life and we knew she would be ok .

Our oldest daughter was blessed to have found a job in south Texas and was already in the process of moving.

We spent 14 years in Region 5 where Gary was able to make great progress in getting younger adults and more women involved with the UAW, striving at the same time to increase all members knowledge of health and safety and all aspects of their union. When Gary was elected Director, women and young adults were encouraged to get involved with their locals. Gary asked the retirees to once again take a more active role and mentor the new members.

It was awesome to see how many new members along with retirees that started coming to the meetings. Both in town and out of town. I would be hugged so much at the end of the meetings; I would actually be sore.

I was getting hugs telling me Thanks for sharing Gary with them and for me attending the meetings with him. Region 5 became one big family to us. In fact, the closing song after all the meetings was "We are Family ".

When some members of the International Executive Board and local union leadership started talking to us about Gary running for President, we decided that we needed to seek God's will in the matter. After almost 43 years on the job fighting for workers' rights, we were not sure we wanted to move again.

After much prayer and sleepless nights, we decided to follow his will and go wherever he leads.

It was one of the hardest decisions and one of the saddest days (outside of the times when we both lost our parents, going home to be with the Lord) when we left our region 5 family.

We knew being back in Detroit would reunite us with our youngest daughter, son in law and 2 granddaughters would be happy times and a true blessing. Birthdays, camping, shopping, ball games and sleepovers would be awesome.

This lasted a little over one year until on August 28, 2019. Our granddaughters (9 and 11) were spending the night with granpa and granma for a school clothes shopping trip that morning. Around 7am  15 to 20 men and women knocked on our front door in Full SWAT attire with another 20 or so in our front yard. One of the granddaughters was still asleep. It was very stressful trying to stay calm in front of our granddaughters absolutely terrifying. Our wonderful and loving family has been shattered.

Thankfully, our daughters are remembering their dad's rules and are very supportive of him.

We have moved to Texas and due to Covid-19 have only seen our oldest daughter and son in law once and have been unable to see our oldest granddaughter.

We are many many years older than we were just a year ago and our health has become an issue.

While looking back to write this letter, I once again remember the sacrifices our family made for his 24 hour a day job and all the family events, we reluctantly accepted he had to miss. We are hoping for a second chance at those family events with our daughters through our granddaughters.

In 46 years, I have never laid my head down to sleep without a goodnight kiss and saying sleep tight to my husband and hearing the same from him , whether it would be in person or on facetime, out of town or out of the country. We would always talk to each other before we went to sleep for the night.

Your Honor If I may. May I please plead for your mercy. Please let him serve his time at home with me. I really need my husband with me.

Your Honor, I am prouder today of the man my husband has become, also of his acknowledgement of the serious charges before you and this court. I know our parents would approve of all he has accomplished and the man he is today.

We know not yet why God led us in the direction he has, someday we will know, as we also know that he walks with us daily.

I understand the seriousness of these proceedings that Gary is facing in your court.

Your Honor, again I ask and pray for your mercy and leniency.

Cindy Jones

Tricia Ziegler (Jones)



August 1, 2020

The Honorable Paul Borman
United States District Judge
Eastern District of Michigan

Re: Gary Jones

Dear Honorable Judge Borman,

My name is Tricia Ziegler.  I am a First Grade teacher in the Walled Lake Consolidated School District and a resident of South Lyon, Michigan.  I am writing to you, with the support of my husband and two daughters (12 and 10 years old), on behalf of my father, Gary Jones.  We are imploring for leniency in sentencing regarding the embezzlement, racketeering and tax evasion charges he has pled guilty too.

Throughout my entire life he has instilled core values like standing up for others, doing the right thing, and always letting me know he was there for his family.  He taught me to always be a team player but stand out and speak up when something was unjust.  As a High School senior, for example, my Dad helped me appropriately handle speaking to the athletic director about unfair treatment in female sports.  He has always supported me from childhood sporting events, to my undergraduate and graduate years at Michigan State and Wayne State University.  He helped me come up with a plan of action in my undergrad when academics and being away at school seemed overwhelming.  Even now when I need advice in my teaching career his guidance has never steered me wrong.  It is because he has led by example and encourages and pushes me to be my best that I am the woman I am today. These life lessons, and many others, have been extended to my daughters and the love he shows is unparalleled.

We know he doesn't take the charges lightly, nor the impact on the UAW and our family.  I have spent my life as part of the UAW family and my immediate family made sacrifices so he could work tirelessly and ensure the workers' rights were taken care of.  While my Dad worked hard to attend every sporting event and family celebration, this wasn't always possible because of work, though he would call immediately after to find out how things went.  We uprooted our family to move to Michigan at a critical point in my sister's and my life; she was starting high school and myself middle school.  Saying goodbye to your childhood friends and working to make new

friends at this level is terrifying. My parents did everything possible to make it a smooth transition, including bringing my sister up early to try out for sports and finding coworkers that had children who could show us around. We did this so he could serve the UAW further--he and my Mom have since uprooted themselves twice more as he continued to serve the UAW. The biggest sacrifice for me was when my parents moved from Michigan to Missouri so he could serve Region 5 directly. I was already in the next phase of my life with a career and had met my future husband and chose to stay. This was extremely hard on all of us, however we knew that he was needed and helping Region 5 helped all union members and blue collar workers beyond the UAW as well. The words of praise sung by members when I met them made these sacrifices feel worthwhile. They'd always end talking to me by thanking me for sharing him and "I just can't say thanks enough." or "I can't say enough good things about your Dad." These were common refrains whenever we would meet anyone under his leadership.

I haven't spoken to the day our lives changed. My husband and I were getting ready to leave for our mandatory back to school meetings and received the call that while our daughters were ok, they had awakened to multiple FBI agents knocking on the door ready to search my parents house. What started out as a sleepover and back to school shopping trip with Granpa and Granma turned into a scary event that had to be explained to two confused children--then 11 and 9. My parents did their best to ease my daughter's fears while also trying to wrap their heads around what was happening. However, they put that on the back burner to assure my daughters. After growing up hearing about all of the things Granpa did to help people, they were unable to comprehend this. Since this happened I have worked to shield them from the press coverage and hope I do not have to have another nightmare explaining to them about where Granpa is.

My family and I implore you to show leniency in sentencing, considering the ability to serve time at home, and think of Gary's character and his impact as a father and grandfather. I want my daughters to have Granpa attend their school and sporting events or be able to facetime him to share something special in their lives. In addition to his importance to our family we also ask that you consider his over four decades of service and sacrifices for the good of the UAW and its members.

Thank you for your time and consideration.

Sincerely,

Tricia Ziegler and Michael Ziegler (husband)

Barbara Brady


July 25, 2020

The Honorable Paul Borman
231 W Lafayette Blvd # 740
Detroit, MI 48226
Re: Sentencing of Gary Jones
Case No. 19-20726

Dear Judge Borman:

I became a Chrysler employee in 1995 and held the position of UAW Benefits Representative from May 2005 until February 2020.

In 2012 Region 5 active members traveled to Kansas City and voted in favor of Mr. Jones as the new Director. Mr. Jones was the polar opposite of our prior director who was self serving, demanding, demeaning, crude and confrontational who traveled with an entourage. Gary Jones brought dignity and self respect to the office. He had an open door policy and corrected us if we addressed him as Director Jones "just call me Gary" he would say. He listened to our issues without judgment was courteous, caring and was someone that we could finally look up to with respect.

Gary informed me that he has pled guilty to the charges brought against him. I am fully aware of the charges which are embezzlement, racketeering and tax evasion. In light of these circumstances, I am happy to offer an endorsement of Gary Jones good character.

I have known Gary for 15 years and in those 15 years I have witnessed a Christian man extremely dedicated to family and to the people of our great union. Gary's devotion to his family was evident, Cindy accompanied him everywhere. His office was covered with family pictures of Cindy, his daughters and their families. He spoke of them endlessly.

Missouri lost two Chrysler assembly plants in 2008. Since my job title was Benefits Rep. I was kept on to assist the active members with relocation and

to retire the members that were eligible. I worked out of the Union hall from 2009 until the flood of 2015 which destroyed the building and contents. Gary's first reaction was to quickly assist the 7000 UAW retires that were left stranded due to the flood. We were in need of a place to have meetings and an office to conduct business. He had an office prepared for us the next day at the Region. In addition the auditorium was available to all three locals affected for their monthly meetings. Along with my relocation came an endless parade of retirees and 40 to 50 additional phone calls per day. I knew that I had a heavy work load and a robust amount of visiting retirees and felt like this might be a disruption to daily activities at the Region. But Gary never made us feel that way. He would frequently stop by my office and chat with the retiree, asking questions and making them feel welcome. Gary truly cared about people and his actions proved it. During summer school and seminars Gary did not retreat after his presentation unlike other directors, he socialized with the active members and retirees after the sessions were over. Christmas parties were open to everyone. While working out of the regional office I witnessed prayer before all meals and this may seem trivial but Gary came into everyone's office each day to say good morning. His actions made everyone feel included.

Since Gary's wrong doings are against the UAW and the UAW has taken action by accepting his resignation and have imposed lifetime disbarment from the union, I would like to ask most respectfully you're Honor to take into consideration that Gary has accepted responsibility for his actions.

Gary made it all the way to the top becoming the 12th President of the greatest Union only to be looked upon with pity and distain now. A man that once could captivate an audience of thousands and would bring them to their feet is no longer welcome. The scandal will follow him throughout his lifetime. I am certain he has had numerous restless evenings consumed with guilt over the disgrace and embarrassment brought on by his activities. But with all said, I ask that you have leniency on his sentencing. His punishment is already being served.

Respectfully,

Barbara Brady

July 15, 2020

Honorable Paul D. Borman
United States District Judge
Eastern District of Michigan
231 W. Lafayette Blvd., Room 725
Detroit, MI  48226

RE:  My dad, Gary Jones

Your Honor,

My name is Bridget Marino and I am the oldest daughter of Gary Jones.  I am writing this letter
on behalf of my husband and daughter and we respectfully request that you consider our
thoughts as you determine his future.

My parents have been married for nearly 46 years and had me when they were 18 years old and
three years later, had my sister, Tricia.  Looking back, I don't know how they did it.  They raised
two very respectable young women that are contributing members of society and made it look
easy.  My dad worked the late shift at the Ford Glass Plant just so he could make it to my sister
and I's basketball, softball, dance and cheerleading events. If that wasn't enough to keep him
busy, my dad went to college and earned a degree at the University of Tulsa. And, went on to get
his CPA accreditation.  All of this speaks to my dad's work ethic and what he instilled in his girls
by example.  You see, my dad is my hero.  Men could only dream to be as great as he is.  He
wears his emotions on his sleeve, would give a stranger the shirt off his back and is very
passionate in family, faith and his country.  He has been a proud Union Man for 45 years and
only buys American made.  I remember my first boyfriend drove a foreign car and my dad would
not allow it in the driveway.  Needless to say, that boyfriend didn't last long.

I've witnessed my dad doing amazing things for the Union.  And I've had on more than one
occasion, UAW members coming up to me and thanking me for the sacrifices that our family
made so my dad could do the work he needed to do to for the better of the Union.  He helped
give women a voice when they didn't have one.  He promoted women into positions of power,
not because they were women but because they deserved the position. My dad has always been a
fair and just man.  He brought faith back into an organization that lost their way.  He made it
OK for people to speak up and challenge the mindset of "this is how it has always been done".
Unfortunately, when it came to some of the practices from the previous leadership team, my dad
didn't challenge them and is paying the ultimate price.  My dad still had more to do in his
position as President of the United Auto Workers. There was more work to be done to make the
Union something to be proud of again.  Even if it wasn't going to win him the popular vote, he
knew that there were some things that needed to be reevaluated and fixed because they were not
being done right.  And, it is with a very heavy heart that I will never see my dad walk in the
Labor Day parade through downtown Detroit again.

It is our sincere hope the court takes this letter into consideration at the time of sentencing. Despite the current case, we believe our dad and grandpa to be an honorable man, a valuable member of our community and church, and a good human being. As his baby, I worry about his health and that his almost 64-year-old heart won't be able to handle incarceration.  Please do not send my father to prison.  We were not raised to beg, but I beg for your mercy as you decide my dad's fate.  My parents now live a few hours away from me and his granddaughter.  Please do not take him away from us when we just got them close to us in Texas.

Thank you for your time.

Sincerely and Respectfully,

Bridget Marino

Fred Dorrell



August 1, 2020

The Honorable Paul Borman
United States District Judge
Eastern District of Michigan

RE: Gary R. Jones

Dear Your Honor Borman,

I am writing on behalf of Gary Jones.  I am familiar with the charges against Gary Jones as well as the seriousness and implications of those charges, however I am not familiar with the circumstances surrounding them nor do I have any personal knowledge of the events attributing to those charges.  I have known Mr. Jones the greater part of my life as I have been friends Gary for over forty years.  It would be impossible to capture all my stories, observations, and experiences with Gary in a brief letter so I will do my best to summarize the character and kind of person I know Gary to be.

Gary and I met while working at the Tulsa Glass Plant in 1975. I hired on in October 1974 and Gary hired on in December 1975. Gary was 19 and I was 21. Gary and I basically grew up together while working at the Tulsa Glass Plant.  In May of 1983 Gary and I, along with two other co-workers, decided to run as a team for a Local Union office. I ran for President and Gary ran for Financial Secretary, respectively and both he and I were elected. Gary worked full time as a Float Control Operator while performing his Financial Secretary responsibilities and also attended college at the University of Tulsa.  In addition, and more importantly, he was a dedicated husband and father to two young girls, Tricia, and Bridget. Regardless of how busy he was with school and work Gary always made time for his family.

Gary and I served in office together for six (6) years and became very close friends. If I ever needed something done, he would be there to get it done, regardless of the time of day.  I remember many times he would come to the Local Union Hall to prepare for a meeting late at night because he had to make sure he could put his girls to bed. He would do the work he needed to do and then return home and complete his schoolwork.  In 1989 Gary was overwhelmingly re-elected for a third term and shortly thereafter was appointed as the Insurance Administrator for the International Union. I feel like I was instrumental in his appointment but all I did was attest to his hard work and dedication to his family, his Local Union Responsibilities, and his work.

As Gary worked his way up through the ranks of the UAW he never forgot where he came from. I contribute his success to the support of his family and close friends.  The Gary Jones I know is a man of integrity, character, and courage who has always been a good listener with a genuine respect for others. His passion, caring attitude, and determination to help others always stood out. When it came fulfilling his responsibilities Gary was always a passionate, caring individual, determined to fulfill his obligations.  He was also the type of person that would not hesitate to tell people what they needed to hear and not what they may want to hear.

Gary would always take time to return calls/text and with a genuineness. He never lost sight of his friends and where he came from. Over the forty years of our friendship, there are so many stories and examples

of his character I could share.  Regardless of his rank, position or class, Gary was always remained true to his friends.  Gary and I kept in touch on a regular basis. I would call or text him and or he would call or text me if he had not heard from me. Our conversations were not about business or organizations but about family and friends that we both had worked with in Tulsa.  We would always joke or tease each other about something and there was always mutual respect.

In September 2018, I lost my youngest son, Jamie.  Gary was recently elected UAW President and when he heard the news, he called me to check on me to see how I was doing and if there was anything I needed, or anything he could do.  He asked me to let him know when the funeral was. I took that to mean when and where to send flowers.  Shortly after my son's funeral Gary called and apologized for not being able to attend my son's funeral and explained that the challenges of taking office and preparing for negotiations, prevented him from being able to attend the funeral in person.   Even as the UAW International President in the middle of a very tedious time he took time out of his busy schedule to support me in any way he could, even if he couldn't attend my son's funeral. This is the type of person Gary is.

In closing, I know Gary and how he not only values his family, but he values others.  Gary is a man of character and integrity whom I support, regardless of what others may say because I know Gary. I appreciate your taking time to read my letter.

Regards,

Fred Dorrell

Carl A. Tillery



July 8, 2020

Honorable Paul Borman
United States District Judge
Eastern District of Michigan

    Re:    This letter is on behalf of Gary Jones

Dear Honorable Judge Borman:

    My name is Carl Tillery. I live in Garland, Texas. I write this letter to you in support of my friend Gary Jones.  I have known Gary Jones for over 40 years.  I first met Gary in 1980 when he was working at the Ford glass plant in Tulsa Oklahoma.

    It has been of one the great pleasures of my life to, not only be a friend of Gary's, but also to have had the privilege of experiencing and enjoying the love and close familial bond between Gary and his wonderful wife Cindy and their gracious and thoughtful daughters, Bridget and Tricia.

    Gary has always been a kind and caring friend for all who were fortunate enough to have made his acquaintance. He has been as dependable a friend as a person could ever hope to have, not just to me, but to his fellow workers and union members. Everybody knows if you have a problem, you can count on Gary to help you.

    I would like to share with you just two personal occasions, out of the too numerous occasions to count, when Gary came to my assistance.

    In 2001, I was hospitalized for over eight weeks. It was a serious and life threatening event. In addition to the concern, compassion, comfort that Gary provided to my family, during this exceedingly emotional and difficult time, Gary took over the task of dealing with my health insurance providers. The insurance carriers were presenting every imaginable obstacle, and foot dragging, to avoid honoring the coverage obligations that they owed to me and my doctors. The insurance carriers' conduct placed a baseless emotional, and crushing additional, financial hardship and disaster upon myself and my family. This was on top of the already overwhelming recovery concerns and burdens that existed. Due to Gary's tireless effort on my behalf, the insurance carriers eventually relented and honored their coverage obligations. Gary had no obligation to do this. Gary simply did so out of kindness and friendship and because he has always been that kind of person.

In 2018, while visiting with Gary, I happened to mention to him that I was having trouble with getting a heart medication drug prescription covered. Gary volunteered to look into the problem for me. Again, Gary had no to obligation to do help me out. As a result of Gary's help, the problem was soon resolved. I do not know what I would have done without Gary's unsolicited assistance.

I understand the seriousness of the proceedings that Gary is now facing in your court. I cannot realistically explain the events which have caused Gary to have to answer for these actions in your court but I do know that if ever anybody deserved a second chance and an opportunity to make amends for their lapses in judgment it would be Gary Jones. I respectfully request Judge Borman that you have mercy on Gary.

Sincerely,

Carl Tillery

September 11, 2020

To The Honorable Paul Borman
United States District Judge
Eastern District of Michigan

Dear Judge Borman,
My name is Susan Abrams and I am a 37
year Member of UAW Local 2250 and one of very
few female Members elected to the Bargaining
Shop Committee where I interacted with Gary
Jones at our Sometimes quarterly "Sub Council"
nationwide GM Conferences but as in the case
of most busy Regional Directors, they mainly interact
with the "Chairmen" (Chairpersons) of their areas.
This Changed for me personally as candidate for
Our Constitutional Convention and voted as one of
Seven winners to represent 2250, I became the
target of a bullying campaign even after winning
the Election. I was targeted on social media as
a "Suck ass", a "Union Slut" and a "whore"! None
of the men winners were treated this way! Gary
Jones was elected at this Convention as President
of the entire UAW, but yet found the time to seek
me out and let me know he was aware and had Zero
tolerance for what these foul Brothers were putting me
through. Later, I met with Gary, his wife and my
husband on this. We were able to pray together at
that time. Gary may very well be guilty of deeds in
this Case but he is not guilty of being a Stand up gentleman
who stood up to bullying & Harassment!
Susan Abrams [Susan Abrams] Thank you Judge!

Dale B. Tillery

███████████████

July 9, 2020

Honorable Paul Borman
United States District Judge
Eastern District of Michigan

Re:     This letter is on behalf of Gary Jones

Dear Honorable Judge Borman:

By way of introduction my name is Dale B. Tillery. I live in Garland, Texas. I have been a licensed attorney in the State of Texas for over 37 years. I served as a Texas State Representative for 8 years. The past 12 years, I have served as the presiding Judge for the 134th Judicial District Court in Dallas, Texas.

I have known Gary Jones and his wonderful family for over 30 years. During all these years, I have admired Gary's commitment, dedication, and love for his family, friends and fellow workers. Furthermore, I have always been personally impressed with the diligence and untiring work ethic Gary has exhibited throughout his life and during his service to the U.A.W.

Gary has always demonstrated the utmost compassion and concern for his family, friends, fellow workers, and union members. It is well known that Gary gives freely of his personal time to assist his fellow workers and friends with their personal problems and challenges. Gary has never been a person who has hesitated in coming to the aid of friends and family whenever they are in need of help or assistance.

Simply put, Gary is a decent and God-fearing man who is, as we all are, fallible and imperfect. I know not all the details, circumstances, and reasons why Gary allowed himself to participate in the events which resulted in his presence before your Honorable Court, and in his admission of guilt, but I do know that such transgressions do not diminish the positive impact that he has had on the lives of his friends, fellow workers, and union members, nor damage or destroy the positive bonds of love, dedication, and commitment that he has forged with his devoted wife, Cindy and their wonderful daughters, Bridget and Tricia.

Sincerely,

Dale Tillery

July 27, 2020

Honorable Paul Borman
United States District Judge
Eastern District of Michigan


RE: Gary Jones


Dear Honorable Judge Borman:


My name is Paul E. Nichols, Sr. I serve as the UAW Retiree Chaplain of Region 5/8, Local 1895, Tulsa Ford Glass Plant, Tulsa, Oklahoma. I was employed at the Tulsa Glass Plant until I retired in 2005 after 30 years of employment. While employed, I was the Senior Chaplain of Local 1895 and, after I retired, I have continued as Retiree Chaplain. I have been a UAW Chaplain for 30 years, and served as the Chairman of the UAW International Chaplaincy Program from 2004 until I retired.  Since then, I have continued to be active in the UAW International Chaplaincy Program.

I am writing in behalf of Gary Jones, who I have known for 45 years. I first meet Gary in 1975 when he hired in at the Tulsa Ford Glass Plant, in Tulsa, OK. and was a co-worker with me packing glass. I knew Gary when he was voted by the Tulsa Ford Glass UAW members to be the Secretary Treasurer of our Local; which position and duties he conducted with great honesty and integrity.  Our friendship continued as he became the UAW Region 5 Director and, ultimately, moved to Detroit to work in the UAW International and, in time, became the UAW International President. I continued to see him several times throughout the years when I attended UAW International functions.

During the years that I have known Gary, I have always known him to be of highest moral and ethical character. I have never witnessed any negative issues or concerns regarding his honesty, morals or integrity. Gary continued to earn my respect over the years as I not only saw first-hand his high level of work ethic and dependability but also his sincere caring and dedication for the UAW Members he represented. In particular, Gary always made himself available to me, as a UAW Chaplain, and gave me significant support whenever I needed any help or had any questions that needed to be answered. It has been my pleasure to have worked with Gary over the years and to continue to have him as a loyal, respected and valued friend.

I understand the nature of the crime Gary has pled to and that he has expressed a deep sense of remorse in making such a serious mistake. It is my sincere hope that the Court takes this letter into consideration at the time of sentencing. Despite the current case, I continue to believe Gary Jones to be an honorable man who is solid in his Faith, a devoted husband and father and an asset to society and any organization.

Sincerely,


Paul E. Nichols, Sr. UAW Retiree Chaplain
Region 5/8, Local 1895

Frank Inman Jr.

███████████████████

July 19, 2020

Honorable Paul Borman
United States District Judge
Eastern District of Michigan

I am writing on behalf of Gary Jones

Dear Honorable Judge Borman,

I am Frank Inman Jr. and I am 88 years old.  I have been a union member since I was 20 years old, and I have a deep love for my union.

I first met Gary Jones in Tulsa, OK when he was a Ford Glass employee and local union member, this was about 35 or 40 years ago. At that time, he was a true union supporter working hard passing out union support leaflets.

Over the years, as he has moved up to higher offices, he has always been there to help those we call rank & file. Many times, he has come to my aid during contract negotiations and arbitration cases. Since the passing of my wife, he has helped with the many issues that come with that, even visiting at our home with his wife Cindy, who is also the mother of two beautiful daughters, who also have young daughters of their own.

Judge Borman, if Gary's whole life could be put before you, you could understand better why his and his family's lives would contribute so much more uninterrupted in his surroundings.

I cannot understand the issues that Gary must answer for in your court but I can truly state that if every person who made a poor judgement decision was as good a person as Gary, the country would be a better place. Remember, he has a clean and honorable past. He is a good husband, father, and grandfather. They all need him.

In my 88 years, I have made some poor judgement decisions and I feel most of us have. I ask you to please consider Gary's whole life and the good he and his family have done. Gary is what my father always called a "good salt of the earth person".

I ask you to please take Gary and his family into consideration when you reach your decision.

Sincerely,

*Frank Inman Jr.*

Frank Inman Jr.



July 16, 2020

The Honorable Paul Borman

United States District Judge

Eastern District of Michigan

Dear Judge Borman:

I am writing this letter today in reference to Mr. Gary Jones.  First let me state that I understand the nature of the crimes to which Gary has been charged and has pleaded guilty.  The purpose of this letter is to provide information for you to consider in his sentencing and give you a view of Gary as I have known him over the past many years.

I have known Gary since the early 1970s.  Gary parents and my parents were good friends and maintained those relationships until their deaths.  In late 1978 when Gary's father, Ray, died suddenly of a heart attack, my parents and I were with Myrtle Jones (Gary's mother) and Gary and Cindy at the hospital the night of Ray's death.  During and after Ray's death I saw Gary take care of his mother; helping and comforting her and providing sound advice for her, even after his mother's second marriage which occurred several years later.

Eventually Gary relocated his family to the Detroit area in order to accept a position with the UAW.  Gary and his family continued a close relationship with his mother, even at such a long distance (both from Detroit and later after relocating once again to Saint Louis) especially after the death of his mother's second husband.  As Gary's mother's health began to decline, he and Cindy made even more frequent trips to Tulsa.  During their visits Gary ran errands for his mother, helped her take care of financial matters, and did odd jobs around the house, such as changing all the light bulbs so that she didn't have that worry.  I recall during one very severe ice storm in Tulsa which resulted in almost all residences and businesses losing electrical power, Gary was concerned about his mother having enough groceries on hand.  He called various groceries stores in the Tulsa area until he found one that was open and would deliver.  His mother was amazed to answer a knock on her door only to discover that Gary had ordered several sacks of groceries to be delivered to her.

In the last few years of Gary's mother's life, I was with his mother a lot, taking her to doctor's appointments, sometimes even to the ER or hospital.  I saw first-hand how Gary showed his concern for his mother by frequently talking directly to the doctors and nurses attending her, keeping on top of his

mother's condition.  If possible, he would rearrange his schedule to come to Tulsa to be with her.  Even if he was unable to come, he would always talk with his mother every day, frequently more than once.

In summary I can say I knew Gary's parents, particularly his mother, very well and I know the values of hard work, integrity, honesty, and Christian principles they taught Gary.  I believe Gary holds those same values.  Gary and I have discussed how this past year has been so difficult and painful, not just for Gary but for his wife and his daughters and their families as well.  I can honestly say that what I have read in the media coverage concerning Gary and his actions in the UAW is not consistent with the Gary Jones I have seen and known over these past many years.  My view of Gary has been of a man who has worked hard, is committed to his family and has provided for them, and who has a deep faith in God.

I respectfully ask you to consider these things.  If any further information is needed I can be reached by cell phone number 918-605-8361 or by email at okiesunflower@sbcglobal.net.

Sincerely,

Phyllis Gay Turner

July 12, 2020

To:  The Honorable Paul Borman, United States District Judge

I wanted to take a moment and speak to you regarding Gary Jones, someone I personally consider not only a true friend, but also simply a great person to everyone who knows him.

I realize the totality of allegations made against Gary, and his subsequent plea before your court. I understand the seriousness of his crimes, I also know another side of Gary, one which has not been portrayed by investigators and likely ignored.  The Gary that plead guilty to these crimes is not the Gary that I know.

I have personally known Gary for over thirty years, as I have worked with and often alongside him during my employment with the United Automobile Workers. It was easy to befriend Gary, as he truly cared about those he worked with.  Even as his responsibility and scope of employment grew greater, he still would go out of his way to ensure everyone else was doing ok and would never hesitate to help anyone out.  Gary would reach out to people within the organization and tried to help them ensure their own success, always encouraging them to work hard, do better and then in turn help those around them as well.  It is no surprise how he turned his work ethic into success.

I know and respect the side of Gary that wanted nothing more than to better the UAW and would fight for those within.   With every position giving him more responsibility, he continued to fight for this organization which he cared deeply for.

The Gary I know has been a Mason and a Shriner.  He has always set himself apart from others around him.  He is a natural leader and always the first to step forward and help another.  I know the Gary who has volunteered and donated to help support the St. Louis Boys and Girls Club.  Gary always was pro-active within his communities.  He truly loved helping everyone around him.   He did not do these things for self-recognition, he simply always wanted to be involved and help others around him.  With his absence there is no doubt the community will suffer.

I also know the Gary who has been a loyal husband to Cindy, and a dedicated father to his two daughters.  I know the Gary who loved spending time with his grandchildren and would brag about them every time we spoke.  Gary's family means the world to him and I cannot imagine the negative impact that they are incurring because of his actions.   I cannot fathom the sadness of three grandchildren not being able to see their grandfather.  I cannot imagine his children not being able to spend weekends or holidays with their father.  I cannot begin to understand how his wife is going to handle hundreds and hundreds of lonely nights, missed anniversary's and waking up alone.

While I do not condone what he has plead guilty to, I am still proud to know Gary and call him my friend.  My life, as well as hundreds of other lives, has been positively impacted by Gary.


Respectfully,

Don Stahl

.

Ken Bougeno ,Retired Member UAW Local 136



July 18,2020

RE: Gary Jones

To Whom It May Concern;

As a retired member I have stayed involved in the UAW to help further the cause for working people and that is how I met Gary Jones when he became Assistant Director of Region 5.  Gary impressed me with his intelligence and ability to join in with the rank in file and make us feel comfortable enough to get invoived and not look down his nose at us.  Gary became Assistant Director under Director Jim Wells who always gave the impression that you were beneath his status, never really mingled with us at all.

I feel that when Gary became Director he did what everybody assumed was the norm throughout UAW and like most UAW Representatives the money spent was for the betterment of the membership and therefore not against UAW policies and not ignorant but naïve to what was happening.  I know this is not an excuse but no one will ever convince me that Gary Jones is a crook.  I think he and every other officer in the UAW assumed was a very gray area and not breaking the law.

Gary has already lost everything he has worked all his life for and does not deserve to spend any time in jail.  It would serve the community better if his abilities were used in the community.  I sincerely hope that you look at him as the man I know to be a loving family man and a good man.

Respectfully,

Ken Bougeno

Retiree UAW Local 136

Chaplain Herb Taylor



July 9, 2020

Hon. Paul Borman
United States District Judge
Eastern District of Michigan

Dear Judge Borman

Thank you for allowing me to speak on behalf of Brother Gary Jones.  I met Gary at one of our Regional Leadership Conference in 2007.  Gary was very positive and knowledgeable of the UAW training being provided at the conference.  It was his character and love for the union that made me realize that Gary was different.  As the years past he became friends.  I noticed that his love for God, the union, and our membership was genuine.  His integrity, compassion, and leadership ability stood out at all of our meetings.  But more than anything else, Gary was not afraid to encourage the membership to believe in the God of your understanding.

In closing, it should be noted that Brother Gary Jones will always be remembered for bringing prayer back to the UAW.  He opened all of his meetings with prayer, and I can truly say that he is a man after God own heart.  I have prayed with Gary regarding the present situation and he has shared some of the mistakes he made while in office.  I know that he have prayed to God for forgiveness and I truly believe that he deserve to receive Mercy for his actions.

Solidarity forever,
Chaplain Herb Taylor

July 14, 2020

Sarah Carothers



Hon.  Paul Borman,


I am a member of the UAW.  I have served as a chaplain for over 30 yrs.

## THE FOUNDATION OF THE UAW CHAPLAINCY PROGRAM.

The foundation of the UAW Chaplaincy program is built on Article 41, Section 2 of the UAW Constitution.

1.  It shall be the duty of each member to conscientiously seek to understand and exemplify by practice the intent and purpose of her/his obligation as a member of this international Union.

2.  it shall be the duty of each meber to render aid and assistance to brother or sister members in cases of illness, death or distress, and in every way acquint her/himself as a loyal and devoted member of the International Union.

3.  It shall be the duty of each member to participate in all Local, State, Provincial and Federal elections through registration and balloting.

When asked to serve on the Chaplaincy program I was honored.  There was a since of fear and challenge when asked to serve in this position.  The challenge was having the responsibility of caring in the workplace for millions of people.  The fear was I wasn't equipped.   Gary Jones is a man that believes in prayer and family values,  he encouraged me and other UAW members as well as non UAW members that the Chaplain Mission Statement is established to provide a method of comfort, encouragement and assistance as best we can to our fellow workplaace empoloyees and their immediate family members at no cost.

 **Purpose**:  is to reflect Godly Integrity, Honesty, Accountability and Responsibility as Chaplaincy members while we reflect the Workplace Chapllaincy program in the international Union UAW.

**We** will maintain"confidentiallity according to the law"

**By** creating an atmosphere of confidence in the individual, our commuity, membership and their family member.

**While** presenting the Chaplaincy program in the best possible light for the welfare of all.

Through our bylaws, Chaplaincy programs, and corporate family values we have become one. There are time when we as individuals have a lapse in judgement and their are consequenses.   Hower we continue to fight the good fight for the greater good.

Gary and his family has dedicated years of their life to corporations involved in the  UAW.  Through divorce, lost of life, lost of wages etc.  Gary has stood in the gap with Integrity, family value, and unconditional love.

Our lives are forever changed as we move into a new season.  We continue the unions inspiration through the workers, committment in this trying time of COVID-19.  This union makes us strong, solidarity forever.  In our hands is placed a power greater than gold.  Grace Grace, we ask consideration.  Matthew 7:7


Sincerely,

Chaplain Dr. Sarah Carothers

# Exhibit B

| Case | Sentence Imposed | Factual Summary |
|---|---|---|
| **UAW Prosecutions Before this Court** | | |
| *U.S. v. Williams*, Cr. No. 20-20382 | 21 months after guilty plea to conspiracy to embezzle union funds.<br><br>Restitution: $147,976<br><br>Forfeiture: Golf items<br><br>Fine: $10,000 | Defendant held a series of high-level positions in UAW (Director of Region 4, Secretary-Treasurer, President). He did not cooperate with the government. He also disclaimed specific knowledge of the Master Account scheme. |
| *U.S. v. Robinson*, Cr. No. 19-20726 | 12 months after guilty plea to conspiracy to embezzle union funds and to defraud the U.S.<br><br>Restitution: $342,000<br><br>Forfeiture: Golf items<br><br>Fine: $0 | Defendant held a lower position in Region 5. Government filed 5K1.1 motion for early cooperation. |
| *U.S. v. Iacobelli*, Cr. No. 17-20406 | 66 months after initial guilty plea to conspiracy to violate the Labor Management Relations Act and for subscribing a false tax return. Subsequently reduced to 48 months after government moved for reduction of sentence.<br><br>Restitution: $835,523<br><br>Forfeiture: Mont Blanc pens: $354,000<br><br>Fine: $10,000 | This defendant was the former Fiat Chrysler Automobiles (FCA) vice president for employee relations. He pled guilty in a scheme to illegally deliver over $1.5 million in prohibited payments and things of value to high-level UAW officials. |

| Case | Sentence Imposed | Factual Summary |
|---|---|---|
| *U.S. v. Durden,* Cr. No. 17-20406 | 15 months after guilty plea to conspiracy to defraud the U.S. and failure to file a tax return. Reduced to 8 months after defense motion for recommendation of home confinement.<br><br>Restitution: $8,811.16<br><br>Forfeiture: None<br><br>Fine: $0 | Defendant was a former FCA financial analyst who helped conceal unlawful payments made to UAW officials. |
| *U.S. v. Brown,* Cr. No. 17-20406 | 12 months and one day after guilty plea to providing misleading and incomplete information to a federal grand jury. Reduced subsequently to 6 months.<br><br>Restitution: N/A<br><br>Forfeiture: None<br><br>Fine: $10,000 | Defendant was the former director of FCA's employee relations department. He knew about payments made to high-level UAW officials. |
| *U.S. v. King,* Cr. No. 17-20406 | 60 days after pleading guilty one count of conspiracy to violate the Labor Management Relations Act. Sentence subsequently reduced to one day time served.<br><br>Restitution: $0<br><br>Forfeiture: None<br><br>Fine: $5,500 | This defendant was a former senior UAW official who took bribes from FCA representatives. The government filed a 5K1.1 motion. |

2

| Case | Sentence Imposed | Factual Summary |
|------|------------------|-----------------|
| *U.S. v. Mickens*, Cr. No. 17-20406 | 12 months and one day after pleading guilty to conspiracy to violate the Labor Management Relations Act.  Reduced to 8 months.<br><br>Restitution: $0<br><br>Forfeiture: None<br><br>Fine: $10,000 | This defendant was a former senior UAW official.  He received thousands in bribes from FCA and helped facilitate other bribes, including to UAW vice president General Holiefield, and his widow.  Government filed a 5K1.1 motion. |
| *U.S. v. Johnson*, Cr. No. 17-20406 | 12 months and one day after pleading guilty to conspiracy to violate the Labor Management Relations Act. Reduced to 5 months.<br><br>Restitution: $0<br><br>Forfeiture: None<br><br>Fine: $10,000 | This defendant is a former senior UAW official.  She received thousands in bribes from FCA and helped facilitate other bribes to high ranking UAW officials. |
| *U.S. v. Morgan*, Cr. No. 17-20406 | 18 months after pleading guilty to tax fraud.  Defendant ordered to halfway house after defense motion.<br><br>Restitution: $190,747<br><br>Forfeiture: $109,984.32<br><br>Fine: $25,000 | This defendant is the widow of former UAW vice president General Holiefield. |

| Case | Sentence Imposed | Factual Summary |
|------|-----------------|-----------------|
| *U.S. v. Jewell*, Cr. No. 19-20146 | 15 months after pleading guilty to conspiracy to defraud the United States.<br><br>Restitution: N/A<br><br>Forfeiture: None<br><br>Fine: $0 | This defendant is a former UAW vice president who accepted unlawful payments from Fiat representatives. |
| **Other UAW Prosecutions** | | |
| *U.S. v. Ashton*, Cr. No. 19-20738 | 30 months after pleading guilty to conspiracy to commit honest services wire fraud and conspiracy to commit money laundering.<br><br>Restitution: N/A<br><br>Forfeiture: $250,000<br><br>Fine: $0 | The former vice president of UAW and ex-GM board member, who steered an almost $4 million watch contract to a friend, in exchange for a $250,000 kickback. |
| *U.S. v. Grimes*, Cr. No. 19-20520 | 28 months after pleading guilty to conspiracy to commit honest services wire fraud and conspiracy to commit money laundering.<br><br>Restitution: N/A<br><br>Forfeiture: $1,509,000; additional personal items (cars, boat, etc.)<br><br>Fine: $0 | The co-conspirator of Ashton, in the above case.  He was a former high-level official in UAW's GM department.  He took $1.5 million in bribes and kickbacks from UAW vendors and contractors. |

| Case | Sentence Imposed | Factual Summary |
|---|---|---|
| **Representative 501 (c) cases** | | |
| *U.S. v. Goodrich*, 2008 WL 398950 (S.D. Fla. 2008) | 2-year probation. Defendant pled guilty to 29 U.S.C. §§ 439, 501(c) violations.<br><br>Restitution: N/A<br><br>Forfeiture: N/A<br><br>Fine: $1,000 fine. | |
| *U.S. v. Holden*, 2007 WL 1712754 (E.D. Mich. 2007) | 2-year probation and 180 day home confinement after pleading guilty to violation of 29 U.S.C. §501(c).<br><br>Restitution: $74,090.09<br><br>Forfeiture: N/A<br><br>Fine: $0 | As treasurer of a union local, defendant issued unauthorized checks to make impermissible purchases and ATM withdrawals.  She had no prior criminal history. |
| *U.S. v. Decker*, 370 F. App'x 671 (6th Cir. 2010) | Imposition of 10 months for violation of 29 U.S.C. § 501(c) affirmed.<br><br>Restitution: $5,684.05<br><br>Forfeiture: N/A<br><br>Fine: $0 | As treasurer, appellant had sole responsibility over his union's credit card, which he misappropriated to make personal purchases.  To cover up his scheme, he also falsified records. |
| *U.S. v. Dorrier,* 89 F. App'x 794 (3d Cir. 2004) | Affirmed imposition of 12 months and one day after guilty plea of embezzlement of union funds, uttering and possessing forged securities, and | As part of his union duties, defendant filed false picket vouchers, improperly deposited funds into his personal |

5

| Case | Sentence Imposed | Factual Summary |
|------|------------------|-----------------|
| | corrupt interference with the administration of the tax laws.<br><br>Restitution: $56,195<br><br>Forfeiture: N/A<br><br>Fine: N/A | accounts, and used other social security numbers to avoid paying taxes. Defendant had no prior criminal history. |
| *U.S. v. Spates*, 162 F. App'x 592 (6th Cir. 2006) | Affirmed sentence of 27 months after guilty plea for embezzling union funds under 29 U.S.C. § 501, and making a false statement, 18 U.S.C. §§ 1001, 1002.<br><br>Restitution: $20,655.21<br><br>Forfeiture: N/A<br><br>Fine: N/A | Defendant was the president of a labor union; he embezzled funds, purchased personal items with the union credit card, filed false financial reports, and fled the state. |
| *U.S. v. Cloud*, 194 F. App'x 255 (5th Cir. 2006) | Affirmed revocation of probation and imposition of 24 months after conviction for embezzlement under 29 U.S.C. § 501(c).<br><br>Restitution: N/A<br><br>Forfeiture: N/A<br><br>Fine: $2,000 | |

| Case | Sentence Imposed | Factual Summary |
|---|---|---|
| *U.S. v. Martin*, 2009 WL 928631 (D. Minn. 2009) | Sentence of 24 months after guilty plea to theft under 29 U.S.C. § 501, and mail fraud.<br><br>Restitution: $43,323<br><br>Forfeiture: N/A<br><br>Fine: $5,000 | Defendant was the business manager of a union for 5 years, but misappropriated union funds.  Defendant sought to destroy evidence and backdate checks to conceal his activity. |
| *U.S. v. Crawley*, 533 F.3d 349 (5th Cir. 2008) | Affirmed a sentence of 78 months after a jury convicted defendant on four counts of mail fraud, embezzlement in violation of 29 U.S.C. § 501(c), and making a false entry in records, 29 U.S.C. § 429(c).<br><br>Restitution: $121,478.86<br><br>Forfeiture: N/A<br><br>Fine: Waived | Appellant was the former president of the union local, and conducted voter fraud so he could win the office elections. In his position, he also received kickbacks. |
| *U.S. v. Evelyn Romero*, Cr. No. 15-007 (C.D. Cal.) | 2-year probation after guilty plea for conspiracy, embezzlement and theft pursuant to 29 U.S.C. § 501(c), and prohibition on persons holding office.<br><br>Restitution: $316,501.98<br><br>Forfeiture: N/A<br><br>Fine: Waived | Former president of United Industrial Services Workers of America Local 101 who embezzled union funds to pay personal and union-related legal fees. |